684 A.2d 597

**COMMONWEALTH of Pennsylvania**

v.

**Jeffrey TIZER, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 19, 1996.

Filed Oct. 10, 1996.

2

4

Christine McMonagle, Assistant Public Defender, Doyles-town, for appellant.

Alan M. Rubenstein, District Attorney, Doylestown, for Commonwealth, appellee.

Before CAVANAUGH, J., CERCONE, President Judge Emeritus and HESTER, J.

CERCONE, President Judge Emeritus:

This is an appeal from the judgment of sentence entered after a jury found appellant Jeffrey Tizer guilty of terroristic threats.[1] We vacate the judgment of sentence and remand to the trial court for proceedings consistent with this opinion.

1.  18 Pa.C.S.A. § 2706.

The trial court has provided us with an apt factual summary:

> Murray Tizer, the victim in this case, owns a sprout farm in Bucks County. During the month of December, the [appellant], who is the victim's brother, would stop at the farm and get produce. On the date in question, the victim testified that he was in his office when the [appellant] arrived at approximately 11:00 a.m. in a highly agitated state. The [appellant] then proceeded to accuse the victim of conspiring to prevent the [appellant] from getting his trust fund. According to the victim, the [appellant] does not have a trust fund. At this point in the confrontation, the [appellant] picked up a child's toy and threw it against the wall. After throwing the toy, the [appellant] started yelling that he was going to kill the victim. As the victim walked into another room, the [appellant] stated, "I'm going to take a knife and stick it through your heart and kill you." Once in the living room, the [appellant] threatened to kill the victim again. The five minute confrontation ended when the [appellant] exited the house and drove away in his van.

Trial court opinion dated September 28, 1995 at 3.

Appellant was charged with terroristic threats, simple assault, harassment, and criminal mischief. On February 17, 1995, the court ordered Correctional Mental Health Services to ascertain appellant's competency to stand trial, current mental condition, mental condition at the time of the offense, mental health considerations in sentencing, and suitability for parole and parole planning. In a report dated April 12, 1995, appellant was found competent to proceed to trial.

On April 18, 1995, appellant made a pre-trial motion not to appear in court during trial. After conducting a colloquy to explain to appellant the consequences of waiving his right to attend his own trial, the trial court granted that motion. At the conclusion of the Commonwealth's case, appellant changed his mind and decided to attend. The jury found appellant guilty of terroristic threats and, on April 24, 1995, the trial court sentenced him to between four (4) and twenty-three (23) months incarceration plus costs. The trial court also ordered

appellant to undergo a mental evaluation in sixty (60) days. By order and opinion dated September 28, 1995, the trial court denied appellant's post-sentence motions.

In this timely appeal from the judgment of sentence, appellant challenges the sufficiency of the evidence supporting his conviction for terroristic threats. He also claims that the trial court erred in deeming him competent to stand trial. In addition, appellant contends that the trial court erred by allowing him to absent himself from a portion of his trial. We shall begin by assessing the sufficiency of the evidence.

When presented with a challenge to the sufficiency of the evidence, an appellate court must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the trier of fact could have determined that all the elements of the crime have been established beyond a reasonable doubt. *Commonwealth v. Hagan,* 539 Pa. 609, 613, 654 A.2d 541, 543 (1995); *Commonwealth v. Rodriquez,* 449 Pa.Super. 319, 324–26, 673 A.2d 962, 965 (1996). In making this determination, we must evaluate the entire trial record and consider all the evidence actually received. *Rodriquez,* 449 Pa.Super. at 324–26, 673 A.2d at 965. It is within the province of the fact finder to determine the weight to be accorded each witnesses' testimony and to believe all, part, or none of the evidence introduced at trial. *Commonwealth v. Molinaro,* 429 Pa.Super. 29, 33, 631 A.2d 1040, 1042 (1993).

As stated, the trial court found appellant guilty of terroristic threats. A person is guilty of terroristic threats, a misdemeanor of the first degree, if he or she "threatens to commit any crime of violence with intent to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience." 18 Pa.C.S.A. § 2706. Accordingly, the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the

threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror. *Commonwealth v. Kelley,* 444 Pa.Super. 377, 386–87, 664 A.2d 123, 127–28 (1995), *appeal denied,* 544 Pa. 603, 674 A.2d 1068 (1996) (Superior Court inferred an intent to terrorize from appellant's deliberate and premeditated acts, *i.e.,* appellant telephoned his attorney's secretary and asked her to advise the attorney that he planned to kill both him and the judge who presided over his case). Neither the ability to carry out the threat nor a belief by the persons threatened that it will be carried out is an essential element of the crime. *Commonwealth v. Hudgens,* 400 Pa.Super. 79, 90, 582 A.2d 1352, 1358 (1990) (quoting *Commonwealth v. Anneski,* 362 Pa.Super. 580, 587, 525 A.2d 373, 376 (1987), *appeal denied,* 516 Pa. 621, 532 A.2d 19 (1987)). Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security. *Id.* at 91, 582 A.2d at 1358.

■ Appellant claims that when he announced his intent to kill the victim, he was merely making spur-of-the-moment threats while feeling angry and agitated. As such, he claims to have lacked the requisite intent. Brief of Appellant at 11, 17. We agree that section 2706 was not designed to penalize spur-of-the-moment threats that arise out of anger in the course of a dispute. *Hudgens,* 400 Pa.Super. at 91, 582 A.2d at 1358, 18 Pa.C.S.A. § 2706, Official Comment—1972. We cannot agree, however, with appellant's characterization of his actions as spur-of-the-moment.

This court accepted such an explanation from a mother who threatened to get a gun and use it against a victim. The victim in that case had first threatened to run over the mother's children if they did not get out of her way. Under those circumstances, the mother's statement was characterized as a spur-of-the-moment threat, made during a heated argument. *Anneski,* 362 Pa.Super. at 584–86, 525 A.2d at 375–76.

The victim in this case, however, never threatened to do anything to appellant or to harm appellant in any way. Nor were the threats the by-product of any argument. Rather, during a five minute confrontation, appellant threatened several times to kill his brother by stabbing him through the heart with a knife. When he left the victim's house, appellant kicked the victim's car and drove into it with his van. Based on the foregoing, the fact finder court could have determined that the Commonwealth established all the elements of the crime of terroristic threats· beyond a reasonable doubt. *See Hudgens, supra,* 400 Pa.Super. at 91, 582 A.2d at 1359 (Superior Court rejected the defendant's claim that his statement was merely a spur-of-the-moment threat; the sword wielding defendant initiated a verbal argument with the victim and threatened to "get" the victim, who had never threatened to do anything or otherwise harm the defendant).

Appellant also claims that the trial court erred by deeming him competent to stand trial. A person will be deemed incompetent if "substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense...." 50 P.S. § 7402(a). The determination of a defendant's competency to stand trial rests within the discretion of the trial judge, whose decision will not be disturbed absent a clear abuse of that discretion. *Commonwealth v. Sam,* 535 Pa. 350, 357, 635 A.2d 603, 606 (1993), cert. denied, 511 U.S. 1115, 114 S.Ct. 2123, 128 L.Ed.2d 678 (1994); *Commonwealth v. Banks,* 513 Pa. 318, 341, 521 A.2d 1, 12 (1987), *cert. denied,* 484 U.S. 873, 108 S.Ct. 211, 98 L.Ed.2d 162 (1987).

At the time of appellant's trial and before the legislature amended the statute, Pennsylvania law required criminal defendants to establish incompetency by clear and convincing evidence. 50 P.S. § 7403(a). As appellant notes, the United States Supreme Court recently struck down an Oklahoma statute that imposed an identical burden on criminal defendants. *Cooper v. Oklahoma,* —— U.S. ——, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996). The *Cooper* Court ruled that the heavy burden violated defendants' due process rights as guar-

anteed by the Fourteenth Amendment to the United States Constitution. Moreover, the Court identified Pennsylvania as one of only four states requiring criminal defendants to prove incompetency by clear and convincing evidence.

In responding to an ensuing challenge to the constitutionality of former section 7403(a), this state's Supreme Court recognized that "*Cooper* clearly rendered section 7403(a) prior to the legislature's recent action unconstitutional." *Commonwealth v. duPont*, 545 Pa. 564, 567–68, 681 A.2d 1328, 1329–30 (1996). As discussed in *duPont*, the legislature amended the competency statute to impose a preponderance of the evidence burden on criminal defendants seeking to demonstrate incompetence:

> (a) **Competency Determination and Burden of Proof.**— Except for an incompetency examination ordered by the court on its own motion as provided for in section 7402(d), the individual making an application to the court for an order directing an incompetency examination shall have the burden of establishing incompetency to proceed by a preponderance of the evidence. The determination shall be made by the court.

50 P.S. § 7403 (amended July 2, 1996). Our Supreme Court did not address whether the new rule should be applied retroactively.

■ Whether to apply a new rule of law retroactively or prospectively is a matter of judicial discretion that must be decided on a case-by-case basis. *Commonwealth v. Metts*, 447 Pa.Super. 275, 287–88, 669 A.2d 346, 352 (1995) (*en banc* ), appeal limited to retroactive application of *Commonwealth v. Brion*, 381 Pa.Super. 83, 552 A.2d 1105 (1989), allowed by, 544 Pa. 255, 675 A.2d 1238 (1996). Pennsylvania common law generally requires civil and criminal courts to apply the law in effect at the time of the appellate decision. *Id.* at 288, 669 A.2d at 353. Accordingly, "unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal." *Id.* (quoting *Commonwealth v.*

*Cabeza,* 503 Pa. 228, 233, 469 A.2d 146, 148 (1983)). Although our Supreme Court has recognized the common law principle favoring retroactive application, it has declined to apply a sweeping rule of retroactivity. *Id.* at 290–91, 669 A.2d at 354. Instead, the Court considers whether the new rule represents a clear break with the past and weighs the three prongs of the "selective retroactivity" test: (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice. *Id.* at 289, 669 A.2d at 353 (citing *Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967) (reaffirming three prong selective retroactivity test)).

We shall begin by discussing the purpose of the new rule. "[T]he criminal trial of an incompetent defendant violates due process." *Cooper,* —— U.S. at ——, 116 S.Ct. at 1376 (quoting *Medina v. California,* 505 U.S. 437, 453, 112 S.Ct. 2572, 2581–82, 120 L.Ed.2d 353 (1992)). In striking down the "clear and convincing" burden applied by Oklahoma, the Supreme Court recognized that the heightened standard may cause a defendant to be tried even though it is more likely than not that he is incompetent. *Id.* at ——, 116 S.Ct. at 1379. The heightened standard subjects criminal defendants to a significant risk of an erroneous determination of competence and to the dire consequences of that determination. *Id.* at ——, 116 S.Ct. at 1381. Specifically, an incompetent defendant who lacks the ability to communicate effectively with counsel may be unable to exercise rights deemed essential to a fair trial, *e.g.,* whether to plead guilty or to proceed to trial, whether to waive the privilege against compulsory self-incrimination, whether to waive the right to a jury trial when applicable, and whether to waive the right to confront one's accusers by declining to cross-examine prosecution witnesses. *Id.* at ——–——, 116 S.Ct. at 1381–82. "The importance of these rights and decisions demonstrates that an erroneous determination of competence threatens a 'fundamental component of our criminal justice system'—the basic fairness of the trial itself." *Id.* at ——, 116 S.Ct. at 1382 (footnote omitted). As

such, application of the new rule as set forth in the amended statute will enhance the reliability of trial. *See Commonwealth v. Kennedy,* 451 Pa. 483, 488–89, 305 A.2d 890, 893 (if a defendant is appointed counsel but is unable to cooperate with counsel because of lack of competence, then the protections afforded by counsel become a nullity). *Compare Commonwealth v. Harper,* 512 Pa. 155, 161–63, 516 A.2d 319, 323 (1986) (applicability of double jeopardy principles does not affect the reliability of the truth determining process and thus weighs against retroactive application); *Metts, supra,* (retroactive application of the expanded exclusionary rule was not warranted because the rule would not enhance the reliability of a trial or guilty verdict, cure a defect in the criminal trial that affects or substantially impairs its truth-finding function, nor correct a serious flaw in the fact-finding process).

We now consider the reliance by law enforcement personnel on the prior law. The new statute does not remove the burden of proof from the defendant. It merely alters the degree of that burden and, in the process, furthers the long-standing prohibition against trying incompetent defendants. *Commonwealth v. Kennedy, supra,* 451 Pa. at 487, 305 A.2d at 892.

> [Although] the difficulty of ascertaining where the truth lies may make it appropriate to place the burden of proof on the proponent of an issue, it does not justify the additional onus of an especially high standard of proof. . . .
>
> > "[I]t would be likewise a reproach to justice and our institutions, if a human being . . . were compelled to go to trial at a time when he is not sufficiently in possession of his mental faculties to enable him to make a rational and proper defense. The latter would be a more grievous error than the former; since in the one case an individual would go unwhipped of justice, while in the other the great safeguards which the law adopts in the punishment of crime and the upholding of justice would be rudely invaded by the tribunal whose sacred duty it is to uphold the law in all its integrity."

*Cooper,* —— U.S. at —— – ——, 116 S.Ct. at 1382–83 (citation omitted).

The limited administrative burden associated with retroactively applying *Cooper, duPont,* and amended section 7403 likewise supports our decision to provide appellant with the benefit of the new rule. Courts should reevaluate the competency of defendants whose cases were pending on appeal when *Cooper* and *duPont* were decided and who preserved such a challenge, by applying a preponderance of the evidence standard. If the court determines that its finding of competency was accurate after applying the lesser burden, then it need not proceed further. Only when the court determines that its finding of competency was in error will additional proceedings be necessary.

The *Cooper* Court addressed the state's concern that its interest in the prompt disposition of criminal charges could potentially be frustrated when a malingering defendant is found incompetent. Minimizing that concern, the Court observed that such error "is subject to correction in a subsequent proceeding and the State may detain the incompetent defendant for 'the reasonable period of time necessary to determine whether there is a substantial probability that he will attain [competence] in the foreseeable future.'" *Cooper,* —— U.S. at ——, 116 S.Ct. at 1382 (quoting *Jackson v. Indiana,* 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972)). *See* 50 P.S. § 7403 (a determination of incompetency to proceed effects a stay of the prosecution for so long as such incapacity persists; an incompetent defendant may be detained so long as a probability exists that he will attain capacity to proceed in the time specified).

We acknowledge that *Cooper, duPont* and section 7403 effect a clear break with statutory law. Nevertheless, we cannot say that the break was wholly unanticipated. At the time *Cooper* was decided, only four jurisdictions, including Pennsylvania, required criminal defendants to prove incompetence by clear and convincing evidence. The Supreme Court in *Cooper* discussed the historic reliance on the preponderance standard, observing that the heightened standard was

employed only recently. Pennsylvania, too, had historically applied the lesser burden. *See Commonwealth v. Simanowicz*, 242 Pa. 402, 405, 89 A. 562, 563 (1913) (held that competence is decided by a preponderance of the evidence). In *Commonwealth v. Banks, supra*, our Supreme Court recognized that before the Mental Health Act of 1976 was passed, the burden rested with the party asserting incompetency to prove it by a preponderance of the evidence. *Id.*, 513 Pa. at 341–42 n. 11–12, 521 A.2d at 12–13 n. 11–12. As such, "the heightened standard offends a principle of justice that is deeply 'rooted in the traditions and conscience of our people.'" *Cooper*, —— U.S. at ——, 116 S.Ct. at 1380 (quoting *Medina*, 505 U.S. at 445, 112 S.Ct. at 2577).

As stated, the trial court in the instant case applied the clear and convincing standard: "It is the burden of the defendant to prove incompetency by clear and convincing evidence and we were not so convinced." Trial court opinion dated September 28, 1995 at 6. We have found that the preponderance of the evidence standard should be applied retroactively. Because competence is a matter vested in the sound discretion of trial court, we vacate the judgment of sentence and remand to provide the trial court an opportunity to reevaluate appellant's competence at the time of trial in light of the lesser burden. *See Commonwealth v. Garnett*, 336 Pa.Super. 313, 320–23, 485 A.2d 821, 825–27 (1984) (after acknowledging the difficulty attending a trial court's attempt to determine retrospectively an accused's competence to stand trial, Superior Court noted that a reviewing court may order a remand or, in unique circumstances when a remand will not satisfy the demands of due process, grant a new trial; where the trial court failed to make findings of fact regarding the defendant's competency, but psychiatric reports and other records relied on by the court existed but were not included in the record, remand was appropriate). If the trial court determines that its previous assessment of competency was in error, then the court and the parties will need to proceed as directed by the Mental Health Procedures Act.

14

Appellant next claims that the trial court erred by allowing him to absent himself from a portion of his trial. Although we recognize that this issue will become moot if the trial court, on remand, rejects its earlier finding of competency, in the interest of judicial economy, we shall address this claim.

The Sixth Amendment to the United States Constitution, Article I, Section 9 of the Pennsylvania Constitution and Rule 1117(a) of the Pennsylvania Rules of Criminal Procedure guarantee the right of an accused to be present in court at every stage of a criminal trial. A defendant who has not been charged with a capital offense may, however, waive that right expressly or impliedly. *Commonwealth v. Ford,* 539 Pa. 85, 100–01, 650 A.2d 433, 440 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1970, 131 L.Ed.2d 859 (1995) (denying a capital defendant the right to absent himself from trial despite the defendant's assertion that his menacing appearance precluded any possibility of a fair trial). *See also Commonwealth v. Sullens,* 533 Pa. 99, 102, 619 A.2d 1349, 1351 (1992) (the defendant failed to appear for trial although he knew his trial date; held that when a defendant is absent without cause at the time of trial, he may be tried in absentia); *Commonwealth ex. rel Hancock v. Maroney,* 177 Pa.Super. 133, 137, 110 A.2d 923, 924–25 (1955) (when the jury in a non capital felony case was selected in the presence of defendant's counsel but in the absence of defendant, who was free on bail, defendant's absence was construed as voluntary); *Commonwealth v. Diehl,* 174 Pa.Super. 280, 284–85, 101 A.2d 440, 442–43 (1953), *aff'd,* 378 Pa. 214, 107 A.2d 543 (1954) (by absenting himself when the court gave additional instructions in response to a jury request, the defendant, who was on bail, waived his right to be present). The burden of proving by a preponderance of the evidence a waiver of the Constitutional right to be present rests with the Commonwealth. *Commonwealth v. Carusone,* 351 Pa.Super. 529, 534, 506 A.2d 475, 478 (1986).

In his brief, appellant concedes that his waiver of the right to attend his trial was voluntary, not coerced. Brief of

Appellant at 25. He claims, however, that the waiver was not made knowingly and intelligently.

In this case, appellant specifically advised the court that he desired to absent himself from the proceedings. The court then conducted a colloquy to advise appellant of the consequences he faced by waiving his right to be present during trial. During that colloquy, the trial court explained some of the dangers:

THE COURT: Let me go over the matters that you lose by not being present at your own trial. First of all, you will not be able to aid your attorney with respect to any and all factual issues which might arise at any time in the course of the trial. You may be a better expert in terms of the factual background of this case than your attorney and would be able to advise her whether you believe witnesses are making errors with respect to their testimony.

You would also be able to advise her with respect to certain lines which may be taken in cross-examination of any such factual witness. You would be aware of background and history that your attorney simply may not be aware of in terms of individual aspects of the testimony of different witnesses.

Secondly, you have a Constitutional right to be present at your own trial. It is a very precious right and it implicates among other things the right of confrontation so that witnesses who are testifying testify under oath subject to effect cross-examination by your side and in your presence.... If you're not here for your trial, you have lost that right of confrontation.

N.T. 4/18/95 at 5–6. Further, the trial court pointed out that appellant would be forsaking the right to be present and exercise challenges during jury selection. The court also cautioned appellant about the effect of his absence on the jury, the dangers of depriving the jury of an opportunity to see him, and the potential that the jury might presume indifference from his absence. Moreover, the trial court warned that counsel would not be allowed to explain to the jury appellant's reasons for his absence:

THE DEFENDANT: Ms. McMonagle will explain to the jury why I refuse to be present.

THE COURT: I wouldn't bank on that....

THE DEFENDANT: I don't have a bank anyway.

THE COURT: I would not count that that is going to happen. I'm not sure Ms. McMonagle can explain to the jury why you are not present....

THE DEFENDANT: Why not?

THE COURT: Because that would be in a sense your testifying to the jury without being under oath and subject to cross-examine [sic] by the District Attorney. So, as I think about it, it's highly likely that she will not be able to explain to the jury why you are not here.

THE DEFENDANT: I think you should grant her leave of Court to say that then.

THE COURT:.... I'm pretty sure that will not happen.

N.T. 4/18/95 at 6–7.

During the colloquy, appellant advised the trial court that he understood he was on trial for terroristic threats, simple assault, harassment and criminal mischief. *Id.* at 18. He also conveyed his awareness of the applicable sentencing guidelines. *Id.* at 11. The trial court then allowed appellant to waive his right to be present during trial. Nevertheless, it appears from the trial transcript that appellant, upon reconsideration, attended the afternoon session of his one-day trial. Because we cannot agree that appellant's waiver was unknowing or involuntary, we find that the trial court did not err in allowing appellant to absent himself from part of his trial.

Judgment of sentence vacated. Case remanded for proceedings consistent with this opinion; trial court is directed to reevaluate appellant's competency at the time of trial. Jurisdiction is not retained.