J-S78007-18
J-S78008-18
J-S78009-18
J-S78010-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDI VANGJELI | : | |
| | : | |
| Appellant | : | No. 216 EDA 2018 |

Appeal from the Judgment of Sentence October 27, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002651-2016

\*\*\*\*\*

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDI VANGJELI | : | |
| | : | |
| Appellant | : | No. 217 EDA 2018 |

Appeal from the Judgment of Sentence October 27, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002655-2016

\*\*\*\*\*

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDI VANGJELI | : | |

J-S78007-18
J-S78008-18
J-S78009-18
J-S78010-18

|                |   |                        |
|----------------|---|------------------------|
|                | : |                        |
| Appellant      | : | No. 218 EDA 2018       |

Appeal from the Judgment of Sentence October 27, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002658-2018

\*\*\*\*\*

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|------------------------------|---|--------------------------|
|                              | : | PENNSYLVANIA             |
|                              | : |                          |
| v.                           | : |                          |
|                              | : |                          |
|                              | : |                          |
| ANDI VANGJELI                | : |                          |
|                              | : |                          |
| Appellant                    | : | No. 219 EDA 2018         |

Appeal from the Judgment of Sentence October 27, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004509-2016

BEFORE:   LAZARUS, J., McLAUGHLIN, J., and STEVENS\*, P.J.E.

MEMORANDUM BY LAZARUS, J.:                    **FILED JANUARY 28, 2019**

Andi Vangjeli appeals from the judgments of sentence, entered in the Court of Common Pleas of Philadelphia County, following a nonjury trial which consolidated four docket numbers,[1] resulting in the following convictions: on

_____

[1] Vangjeli filed a single brief, as the matters and issues across the four docket numbers are interrelated.  **See** Pa.R.A.P. 2138.  For the same reason, we consolidate his appeals *sua sponte*.  **See** Pa.R.A.P. 513.

_____

\*   Former Justice specially assigned to the Superior Court.

- 2 -

docket number 2651—terroristic threats[2] and harassment;[3] on docket number 2655—terroristic threats and simple assault;[4] on docket number 2658—carrying a firearm without a license,[5] carrying a firearm in public in Philadelphia,[6] terroristic threats, simple assault, and recklessly endangering another person (REAP);[7] and on docket number 4509—intimidation of a witness,[8] stalking,[9] harassment, and criminal use of a communication facility.[10] After careful review, we affirm in part, and vacate in part.

From 2012 until July of 2014, K.O. dated Vangjeli's younger brother Emiliano. K.O. discovered she was pregnant on November 5, 2014, and suspected Emiliano was the father. The relationship fell apart after two paternity

---

[2] 18 Pa.C.S.A. § 2706.

[3] 18 Pa.C.S.A. § 2709.

[4] 18 Pa.C.S.A. § 2701.

[5] 18 Pa.C.S.A. § 6106.

[6] 18 Pa.C.S.A. § 6108.

[7] 18 Pa.C.S.A. § 2705.

[8] 18 Pa.C.S.A. § 4952.

[9] 18 Pa.C.S.A. § 2709.1.

[10] 18 Pa.C.S.A. § 7512.

tests confirmed otherwise. Subsequently, Vangjeli initiated a series of personal confrontations and social media attacks against K.O. that continued into 2016.

On November 1, 2015,[11] Vangjeli approached K.O. from behind at a gas station. After a verbal exchange, Vangjeli lifted his shirt, exposing the handle of a black gun in his waistband. K.O. feared for her safety and left. Vangjeli did not have a license to possess a firearm. However, he lived in the same house as Emiliano and had access to the .9mm pistol Emiliano kept under his bed.

On November 20, 2015,[12] K.O. was leaving a local bar when she encountered Vangjeli and several of his friends. After turning to walk to her car, K.O. was interrupted by a glass bottle thrown at her head. Vangjeli then approached K.O., tore her cross-body bag from her person and spat on her face. Vangjeli told K.O. he wanted to hit her and attempted to do so. Though he missed, K.O. was fearful.

On November 25, 2015,[13] Vangjeli, along with a group of his friends, approached K.O. in public and again threatened to hit her. Vangjeli struck K.O.

_____

[11] The November 1, 2015 incident forms the basis for charges filed under docket number 2658.

[12] The November 20, 2015 incident forms the basis for charges filed under docket number 2655.

[13] The November 25, 2015 incident forms the basis for charges filed under docket number 2651.

and spat on her. K.O. told Vangjeli she would go to the police if he did not leave her alone. On December 1, K.O. filed a police report after Vangjeli posted photos of her on his social media websites.

Beginning on December 9, 2015,[14] Vangjeli published a series of Twitter posts, calling K.O. derogatory names and openly wishing for her to suffer physical harm. Several of these posts, made immediately prior to K.O.'s testimony at Vangjeli's preliminary hearing, called for K.O.'s death. Vangjeli continued publishing tweets directed at K.O. after her testimony, often characterized by overtly racist, misogynist, or sexually explicit content.

On March 25, 2016, K.O. encountered Vangjeli at a store, where he took three video recordings of K.O. over her protests. She told the police the incident made her feel as if she could encounter Vangjeli anywhere and be subject to emotional, mental, or physical abuse. *See* N.T. Trial, 4/19/17, at 87 (recounting, at trial, that by the time this incident took place, "[Vangjeli] had already been taken into custody and it was an ongoing matter and he sees me in public and still continues to act the way he was. It was concerning to me that it wasn't going to end.").

_____

[14] The incidents that occurred after December 9, 2015 form the basis for charges filed under docket number 4509.

After a non-jury trial held on April 21, 2017, the Honorable Edward Wright imposed a total of two to five years' incarceration, followed by five years of probation on October 27, 2017.[15] Vangjeli filed timely post-sentence motions, which were denied on December 8, 2017. Appellant filed a timely notice of appeal under each docket number, after which he filed timely Pa.R.A.P. 1925(b) statements.

On appeal, Vangjeli challenges the sufficiency of the evidence supporting his convictions for harassment, intimidation of a witness, criminal use of a communication facility, terroristic threats, carrying a firearm without a license, carrying a firearm in public in Philadelphia, and REAP. He also challenges the weight of the evidence underpinning his convictions for carrying a firearm without a license and carrying a firearm in public in Philadelphia.

Our standard of review with regard to sufficiency claims is well-settled:

---

[15] Judge Wright sentenced Vangeli as follows: on docket number 2651, three years' probation for terroristic threats, and no further penalty for harassment; on docket number 2655, three years' probation for terroristic threats, and two years' probation for simple assault; on docket number 2658, two to five years' incarceration for carrying a firearm without a license, two years' probation for carrying a firearm in public in Philadelphia, two years' probation for terroristic threats, two years' probation for simple assault, and two years' probation for recklessly endangering another person; and on docket number 4509, five years' probation for intimidation of a witness, three years' probation for stalking, one year's probation for harassment, and five years' probation for criminal use of a communication facility. His conviction for carrying a firearm without a license is the sole basis for his sentence of incarceration. On all other convictions, Vangjeli received sentences of probation, consecutive to his sentence of incarceration, and concurrent to one another.

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. . . . When performing this review, we may not reweigh the evidence or substitute our own judgment for that of the fact finder.

*Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa. Super. 2013) (citation and quotation omitted).

Vangjeli challenges his harassment conviction under docket number 2651,[16] averring the Commonwealth failed to prove beyond a reasonable doubt that he acted with the necessary intent to harass.

The Crimes Code defines harassment, in relevant part, as follows:

**§ 2709. Harassment**

(a) Offense defined.--A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:

> (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same

18 Pa.C.S.A. § 2709(a)(1). The intent to harass "may be inferred from the totality of the circumstances." *Commonwealth v. Lutes*, 793 A.2d 949, 961

---

[16] Vangjeli's statement of questions lists separate challenges to the sufficiency of "the harassment charges" and the harassment charge under docket number 4509. Brief of Appellant, at 3. His argument, however, only challenges the harassment conviction under docket number 2651, submitting no argument whatsoever related to his harassment conviction under docket number 4509. *Id.* at 19–23. His challenge to the harassment conviction under docket number 4509, therefore, is waived. *See* Pa.R.A.P. 2119(a).

(Pa. Super. 2002). Such an inference can be drawn from testimony indicating a victim was subjected to unwanted physical contact by another. *See Commonwealth v. Blackham*, 909 A.2d 315, 319 (Pa. Super. 2006) (finding valid inference of intent to harass when child grabbed by arm and dragged to house by grown woman).

Vangjeli avers his behavior on November 25, 2015, which began with yelling obscenities at K.O., escalated to spitting on K.O., and ultimately ended with striking K.O, "was intended to address what was being relayed to him by [K.O.] and not intended to annoy or harass her." Brief of Appellant, at 22; 36-37. He, however, offers no legal justification as to why K.O.'s alleged provocation undermines an inference of an intent to harass drawn from clear evidence of unwanted physical contact. Subjecting K.O to such clearly unwanted contact provides a proper basis for inferring an intent to harass. *See Blackham*, *supra*, at 319.

Vangjeli further submits that the evidence was insufficient to sustain a charge for intimidation of witnesses because the Commonwealth failed to prove that he intentionally intimidated K.O. or attempted to dissuade her from reporting a crime or presenting testimony related to the commission of a crime. Brief of Appellant, at 36.

The Crimes Code defines intimidation of witnesses or victims, in relevant part, as follows:

**§ 4952. Intimidation of witnesses or victims**

(a) Offense defined.--A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:

> (1) Refrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime.

18 Pa.C.S.A. § 4952(a)(1). The intent requirement has been explicated as follows:

> [A]ctual intimidation of a witness is not an essential element of the crime. The crime is committed if one, with the necessary mens rea, 'attempts' to intimidate a witness or victim. . . . The trier of the facts, therefore, could find that appellant attempted to intimidate his accuser and that he did so intending or, at least, having knowledge that his conduct was likely to, impede, impair or interfere with the administration of criminal justice. . . . The Commonwealth is not required to prove mens rea by direct evidence. Frequently such evidence is not available. In such cases, the Commonwealth may rely on circumstantial evidence.

*Commonwealth v. Collington*, 615 A.2d 769, 770 (Pa. Super. 1992).

This Court, therefore, must examine whether the record supports an inference that Vangjeli acted to interfere with "the administration of the justice system by convincing [the victim] to withhold testimony." *Commonwealth v. Beasley*, 138 A.3d 39, 48 (Pa. Super. 2016) (finding defendant's YouTube rap video, threatening police officers scheduled to testify, furnished sufficient evidence for inference of intent to interfere with administration of justice). There

need not be a specific threat connecting a defendant's behavior to a victim's trial testimony—the contents and timing of an action, taken in conjunction with the surrounding circumstances, is sufficient, if believed by the finder of fact, to permit an inference that a threat was made with the purpose of intimidating a witness whose testimony is critical in the impending trial. **See Collington**, **supra** at 770 (finding defendant's letter, which did not specifically refer to upcoming rape trial, provided sufficient basis for inferring it was sent to victim with intent to impede justice).

Vangjeli claims, in order to sustain his conviction, this Court would need to conclude that communicating to a victim a desire to cease prosecution constitutes a *per se* violation of the law. **See** Brief of Appellant, at 37. This assertion is as irrelevant as it is inapposite—not only does screaming, spitting, and striking an individual go a great deal farther than merely communicating a desire to cease prosecution, our case law demands no such bright line rule. **See**, **e.g.**, **Collington**, **supra** at 770.

Vangjeli further argues that evidence adduced at trial fails to suggest an intent to prevent K.O. from testifying. **See id.** at 39–42 (citing absence of threats connected to K.O.'s testimony and indirect manner in which Vangjeli's social media posts threatened K.O.). While we agree that Judge Wright's Rule 1925(a) opinion cites instances of intimidation without offering a clear connection to the conclusion that Vangeli intended to discourage K.O.'s

participation in the legal process, we disagree with the assertion that the facts of this case, viewed in the light most favorable to the Commonwealth, preclude a logical inference that Vangeli's conduct constituted witness intimidation.[17]

Judge Wright's Rule 1925(a) opinion cites Vangeli's conduct on March 25, 2016, where he taunted K.O., recorded her on his cell phone, and referenced the ongoing case against him. Rule 1925(a) Opinion, 4/13/18, at 10–12. However, by that time, K.O. had also previously endured Vangjeli's calls for her death on social media—messages which directly referenced her impending testimony at his preliminary hearing.[18] After the incident on March 25, 2016, less than one month before trial, K.O. felt as if Vangjeli's threatening behavior "wasn't going to end." *See* N.T. Trial, 4/19/17, at 87. This unbroken pattern of behavior, viewed in the light most favorable to the Commonwealth, affords a clear inference that Vangjeli intended to keep K.O. from testifying. Proving the required mental state for intimidation of a witness is not an issue of whether the defendant's threats were clear, or whether the threats were received by the victim in a timely fashion—the decisive question, rather, is whether the facts

---

[17] This court is free to affirm Vangjeli's conviction on grounds other than those discussed by the trial court. *See Commonwealth v. Truong*, 36 A.3d 592, 593 n.2 (Pa. Super. 2012).

[18] In the twenty-four hours preceding Vangjeli's preliminary hearing, K.O. was aware of at least four posts on social media where Vanjgeli expressed his desire for K.O.'s death in conjunction with her role as a witness. *See* N.T. Trial, 4/19/17, at 57–58.

permit an inference of intent to intimidate. *See Beasley*, *supra* at 39; *see also Collington*, *supra* at 770. Vangjeli's statements, desirous of K.O.'s death, in conjunction with his menacing online and in-person behavior throughout the trial process, permit the inference that Vangjeli acted with a desire to instill fear, so as to discourage K.O. from offering testimony.

Vangjeli also asserts the evidence was insufficient to sustain his conviction for criminal use of a communication facility because the Commonwealth failed to prove that he used a communication facility to commit or attempt a crime graded as a felony.

The Crimes Code defines criminal use of a communication facility as follows:

**§ 7512. Criminal use of communication facility**

(a) Offense defined.--A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act. Every instance where the communication facility is utilized constitutes a separate offense under this section.

. . . .

(c) Definition.--As used in this section, the term "communication facility" means a public or private instrumentality used or useful in the transmission of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part, including, but not limited to, telephone, wire, radio, electromagnetic, photoelectronic or photo-optical systems or the mail.

18 Pa.C.S.A. 7512(a), (c). Under this section, therefore, the Commonwealth must establish beyond a reasonable doubt that:

> (1) Appellant [] knowingly and intentionally used a communication facility; (2) Appellant [] knowingly, intentionally or recklessly facilitated an underlying felony; and (3) the underlying felony occurred. . . . Facilitation has been defined as any use of a communication facility that makes easier the commission of the underlying felony.

*Commonwealth v. Moss*, 852 A.2d 374, 382 (Pa. Super. 2004) (internal citations omitted).

As discussed above, the Commonwealth proved beyond a reasonable doubt that Vangjeli intentionally used the internet to voice his desire to see K.O. dead before his preliminary hearing, and he used his cellular telephone to record K.O. in a manner that made her feel threatened. Both are communication facilities within the meaning of the statute. 18 Pa.C.S.A. § 7512(c). Vangjeli's use of these devices in a clearly threatening manner supports an inference that he knowingly used the aforementioned communication facilities to intimidate a witness, and we have concluded that such conduct was a felony under section 4952(a)(1). Vangjeli's conviction for criminal use of a communication facility is, therefore, supported by sufficient evidence.

Vangjeli asserts that the evidence was insufficient to sustain his convictions for terroristic threats under docket numbers 2651, 2655, and 2658 because the Commonwealth failed to prove that Vangjeli threatened, at any point, to commit a crime of violence against K.O. Brief of Appellant, at 25–26.

The Crimes Code defines terroristic threats, in relevant part, as follows:

**§ 2706. Terroristic threats**

(a) Offense defined.--A person commits the crime of terroristic threats if the person communicates, either directly or *indirectly*, a threat to:

> (1) commit any crime of violence with intent to terrorize another

18 Pa.C.S.A. § 2706 (emphasis added). The Commonwealth need not prove any of the following: (1) communication of an express or specific threat, ***Commonwealth v. Martinez***, 153 A.3d 1025, 1028 (Pa. Super. 2016); (2) direct communication of a threat, ***Commonwealth v. Kelley***, 664 A.2d 123, 127 (Pa. Super. 1995); (3) the ability to carry out a threat, ***Commonwealth v. Tizer***, 684 A.2d 597, 600 (Pa. Super. 1996); or (4) a belief by the person threatened that the threat will be consummated, ***id.*** The Commonwealth must, however, prove the following elements: 1) the defendant threatened a crime of violence, ***id.***; and 2) the threat was made with either the intent to terrorize, or reckless disregard for the risk of causing terror. ***Commonwealth v. Tizer***, 684 A.2d 597, 600 (Pa. Super. 1996). These elements are rooted in the need to protect individuals from "the psychological distress that follows from an invasion of another's sense of personal security." ***Commonwealth v. Reynolds***, 835 A.2d 720, 729 (Pa. Super. 2003).

Vangjeli's terroristic threats conviction on docket number 2658 stems from his actions on November 1, 2015, where he approached K.O. at a gas station,

- 14 -

engaged in a verbal altercation, and lifted his shirt to expose a handgun. ***See***
N.T. Trial, 4/21/17, at 84–85 (closing argument by Commonwealth stated, "it's
terroristic threats and not attempted murder" because Vangjeli brandished
handgun intending to frighten K.O., not to kill her). Vangjeli argues the
November 1, 2015 incident fails to furnish a basis for terroristic threats, owing
to the absence of any evidence indicating he "*said* anything that could be
considered a threat." Brief of Appellant, at 27 (emphasis added).

We find this argument unavailing. The record supports the trial court's
finding[19] that K.O "saw the black handle of a firearm in [Vangjeli's] waistband. .
. . Therefore, it can be inferred that [Vangjeli] was attempting to intimidate [K.O]
with a firearm." Rule 1925(a) Opinion, 4/13/18, at 15. On this basis, we find
the evidence supports an inference that Vangjeli threatened a crime of violence,
and that he made that threat with the intent to terrorize. ***See Tizer***, ***supra***.

Exposing a gun to K.O., in the context of an unprompted argument,
indirectly communicated the threat that she would be shot. ***See in re Maloney***,
636 A.2d 671, 676 (Pa. Super. 1994) (pointing gun at victim, while telling victim
to leave, suggested victim would be shot if he did not comply). Vangjeli's
gesture—exposing a concealed gun to another individual immediately following
an argument—would naturally induce terror. His intent to terrorize, therefore,

_____

[19] Discussed further, *infra*, in the context of Vangjeli's convictions of carrying a
firearm without a license and carrying a firearm on public streets in Philadelphia.

can be inferred from his actions. *See Commonwealth v. Robinson*, 817 A.2d 1153, 1159 (Pa. Super. 2003) ("Intent . . . is a subjective element. . . . Generally speaking, one is presumed to intend the normal consequences of one's actions."). The Commonwealth, therefore, proved both elements required to sustain Vangjeli's conviction of terroristic threats under docket number 2658. *See Tizer*, *supra*.

Vangjeli's terroristic threats conviction under docket number 2655 stems from his actions on November 20, 2015, when Vangjeli encountered K.O at a bar and tore her bag from her person, spat on her face, and menaced her with a balled fist, before taking a swing at her and missing. N.T. Trial, 4/19/17, at 114–17. K.O. described the encounter to the police as follows: "[Vangjeli said] I wish I could hit you so bad with his fist balled up and [Vangjeli said] as a matter of fact I can, and Vangjeli swung at [K.O.]" *Id.* at 117. Vangjeli argues that this behavior lacks "anything . . . that could be construed as a threat." Brief of Appellant at 27. As previously discussed, clear physical manifestations of violence sufficiently communicate a specific threat of violence. *See Martinez*, *supra*; *see also Kelly*, *supra*. Viewing the record in the light most favorable to the Commonwealth, we find the court properly inferred Vangjeli communicated a threat of violence with the intent to terrorize, or with reckless disregard for the risk of terror that would result from threatening to throw a punch at K.O. after spitting on her, and tearing her bag away.

Vangjeli's final conviction for terroristic threats on docket number 2651 stems from his conduct on November 25, 2015. The court stated Vangjeli committed the crime of terroristic threats when "he stated that he had 'nothing to live for' and that he would 'knock out' [K.O.] if she continued to look at him," finding this situation involved Vangjeli "directly threatening to strike [K.O.], causing her fear."[20] Rule 1925(a) Opinion, 4/13/18, at 13–14.

Vangjeli avers the statements underpinning his conviction of terroristic threats were made by Dan O'Connor, not Vangjeli himself, and highlights the following testimony by K.O.:

Q. Do you know Dan O'Connor?

A. That's his best friend.

Q. Do you know him?

A. Not personally, I know of him.

Q. Would you recognize him?

A. Yes.

Q. Did you see him that night?

A. Yeah, outside.

Q. And you tell him to leave him alone and he tells you don't look
at him or he'll knock you out. And then you tell Detective Allen he

_____

[20] The Rule 1925(a) Opinion addresses terroristic threats in the context of the November 25, 2015 incident, but fails to mention Vangjeli's other terroristic threats convictions. Rule 1925(a) Opinion, 4/13/18, at 13–14.

has nothing to live for and nothing lose, and then he spits in your face; is that correct?

A. Correct.

Q. So for him to spit in your face you would have been pretty close, wouldn't you?

A. Correct.

Q. And how come he got that close to you?

A. As we were inside in the basement of the bar there were easily 200 people there. I wasn't sure where And[i] went after he walked away from me, but when me and my friend went outside to the food truck they had in the parking lot, I came in contact with And[i] again sitting along the bar outside with his friends.

N.T. Trial, 4/19/17, at 120.

This testimony quoted above features vague pronouns which could lead one to believe either that O'Connor or Vangejli made the threatening statements. This Court is not bound by a trial court's findings of fact which are flagrantly contrary to the evidence. *See Commonwealth v. Dunklin*, 280 A.2d 629, 631 (Pa. Super. 1971) (discarding lower court's finding of fact when interpretation of appellee's testimony went against "[t]he only conclusion which can be drawn from [the] testimony"). However, short of the extraordinary, it is not the position of this court to "reweigh the evidence or substitute our own judgment for that of the fact finder." *Commonwealth v. Koch*, 39 A.3d 995, 1001 (Pa. Super. 2011)

While on direct examination, K.O. offered a clearer picture of the events on November 25, 2015, when she stated

> I proceeded to walk towards my car and the defendant and [Vangjeli's] friends continued to follow me. I had a cross body bag, he ripped the bag off of me and broke it. For whatever was going on at the bar at that time, they were already on their way. So we stopped at the corner next to the corner store, we had words. The defendant spit on me a few times, and then I approached the cop, and asked him to do something and the cop told me to just go home.

N.T. Trial, 4/19/17, at 35. The second statement provides a basis, in the light most favorable to the Commonwealth, for inferring that Vangjeli alone made the threatening statements to K.O. We, therefore, cannot find that Judge Wright's interpretation of the trial testimony was "flagrantly contrary to the evidence." **Dunklin**, **supra**, at 631. Vangjeli's threat to knock K.O. out, made in close proximity to ripping K.O.'s bag away and spitting on her, furnishes the necessary basis for finding a threatened crime of violence and an intent to terrorize. **See Tizer**, **supra**.

Vangjeli argues that his convictions of carrying a firearm without a license and carrying a firearm on public streets in Philadelphia rest on insufficient evidence because the Commonwealth failed to prove beyond a reasonable doubt that Vagnjeli was, in fact, carrying a genuine firearm as defined by the Uniform Firearms Act.[21] **See** Brief of Appellant, at 29.

_____

[21] 18 Pa.C.S.A. §§ 6101–6127.

Possession of a firearm is an integral element of both carrying a firearm without a license and carrying a firearm on public streets in Philadelphia, which are defined as follows:

**§ 6106. Firearms not to be carried without a license**

(a) Offense defined.--

(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S.A. § 6106(a)(1).

**§ 6108. Carrying firearms on public streets or public property in Philadelphia**

No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:

(1) such person is licensed to carry a firearm; or

(2) such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

18 Pa.C.S.A. § 6108(1), (2).

Under both sections, the Commonwealth must establish that an individual either had actual physical possession of a firearm, or had the power of control over a firearm with the intent to exercise control. **See _Commonwealth v. Carter_**, 450 A.2d 142, 146–47 (Pa. Super. 1982) (requiring, under section 6106,

physical or constructive possession of firearm without license); **see also Commonwealth v. Baldwin**, 985 A.2d 830, 833–34 (Pa. 2009) (requiring, under section 6108, possession of firearm without license in public in Philadelphia). Possession may be shown entirely through circumstantial evidence. **Id.** A witness's assertion, if credible, is all that is needed to prove possession of a firearm in violation of the Uniform Firearms Act, even in instances where the police have not recovered a weapon. **Commonwealth v. Robinson**, 817 A.2d 1153, 1161–62 (Pa. Super. 2003) ("[The victim] testified that all three attackers possessed handguns. This is all that is necessary.").

Both sections 6106 and 6108 prohibit individuals from possessing objects that *could be made* to fire a shot. **See Commonwealth v. Gainer**, 7 A.3d 291, 299 (Pa. Super. 2010) (stating correct question under current statutory framework as "whether [a] pistol could be made to shoot a bullet"). Though the statutory definition of a firearm has changed since our Supreme Court decided **Commonwealth v. Layton**, 307 A.2d 843 (Pa. 1973), **Layton** and its progeny still require the Commonwealth to present evidence of whether a pistol is "capable of being converted into an object that could fire a shot." **Gainer**, **supra**, at 299. "A reasonable fact finder may, of course, infer operability *from an object which looks like*, feels like, sounds like or is like, a firearm. Such an inference would be reasonable without direct proof of operability." **Commonwealth v. Layton**, 307 A.2d 843, 844 (Pa. 1973) (emphasis added).

At trial, Vangjeli contested whether the Commonwealth presented evidence of an operable firearm. *See e.g.* N.T. Trial, 4/19/17, at 111 (questioning whether K.O. could tell difference between BB guns, water pistols, or real firearms). K.O. asserted she knew it was a real handgun from the black handle she saw in Vangjeli's waistband. *Id.* at 112. Acting as the finder of fact, the court credited K.O.'s testimony, specifically highlighting her description of Vangjeli displaying "the firearm in a prominent way." Rule 1925(a) Opinion 4/13/18, at 15–16. The court further found Vangjeli knew of and had access to his brother's handgun. *Id.* at 16. In light of the facts and relevant law, the Commonwealth furnished a proper basis for inferring Vangjeli had access to a firearm and possessed that firearm on a public street in Philadelphia. *See Robinson*, *supra* at 844 (allowing testimony alone to serve as basis for finding possession of firearm).

As the record further indicates Vangjeli lacked a valid license to possess a firearm, N.T. Trial 4/21/17, at 4, and the incident occurred in public in the city and county of Philadelphia, *id.*, at 26, we find the Commonwealth provided a sufficient basis for Vangjeli's convictions under both sections 6106 and 6108.

Vangjeli argues that his conviction for REAP rests on insufficient evidence because the Commonwealth failed to prove Vangjeli intentionally placed K.O. in danger of death or serious bodily injury.

The Crimes Code defines REAP as follows:

**§ 2705. Recklessly endangering another person**

> A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S.A. § 2705.  REAP is distinguished from the firearms charges discussed *supra* by the added requirement that the Commonwealth demonstrate the victim was in actual danger.  ***Commonwealth v. Hopkins***, 747 A.2d 91, 915–16 (Pa. Super. 2000).  To sustain a conviction under this section,

> [T]he Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so. Danger, not merely the apprehension of danger, must be created. The mens rea for REAP is a conscious disregard of a known risk of death or great bodily harm to another person.

***Id.*** (citation omitted).  When the charge of REAP involves a firearm, the Commonwealth can prove the ability to inflict harm by showing either "that the gun was loaded or the surrounding circumstances were inherently dangerous." ***Commonwealth v. Baker***, 429 A.2d 709, 711 (Pa. Super. 1981); ***compare Commonwealth v. Gouse***, 429 A.2d 1129, 1131 (Pa. Super. 1981) ("the pointing of an unloaded weapon, without more, does not constitute recklessly endangering"), ***with Commonwealth v. Rivera***, 503 A.2d 11, 12–13 (Pa. Super. 1985) (en banc) (finding evidence sufficient for inference of ability to inflict death or serious bodily injury without proof gun was loaded when defendant tied victim up in her own home at gunpoint and demanded combination to safe).

The trial court found Vangeli's act of raising his shirt and exposing the gun in his waistband to K.O. was "in and of itself" enough to sustain a conviction for REAP as "a firearm is capable of causing serious bodily injury or death, and the firearm was located where [Vangjeli] could easily access it." Rule 1925(a) Opinion, 4/13/18, at 18. This conclusion is not borne out by the case law; the Commonwealth must prove an actual present ability to inflict harm, not merely the apparent ability to do so. *Hopkins*, *supra*. There is no evidence Vangjeli's gun was loaded, or that brandishing a gun without pointing it at K.O., in the absence of clear, verbal threats, created a set of circumstances that would allow this Court to infer Vangjeli possessed the ability to inflict death or serious bodily injury. Consequently, the Commonwealth failed to prove that Vangjeli had the "actual present ability to inflict harm and not merely the apparent ability to do so." *In re Maloney*, 636 A.2d 671, 675 (Pa. Super. 1994). We, therefore, vacate Vangjeli's judgment of sentence for REAP on docket number 2658.

Next, Vangjeli claims that the verdict on the firearms charges is against the weight of the evidence[22] because "the testimony regarding what the complainant observed in appellant's waistband was a firearm as defined in the Uniform Firearms Act was inconsistent, contradictory, and convoluted given that

_____

[22] Vangjeli preserved his weight claim by including it in his timely post-sentence motion. *See* Pa.R.Crim.P. 607.

- 24 -

K.O. candidly admitted that she was not familiar with firearms and that what she saw in his waistband could have been a BB gun."   Brief of Appellant, at 44.

When a defendant challenges the weight of the evidence, relief in the form of a new trial may be granted only where the verdict shocks one's sense of justice.  This Court reviews the trial court's exercise of discretion in ruling on the weight claim, not the underlying question of whether the verdict was against the weight of the evidence.  ***Commonwealth v. Champney***, 832 A.2d 403, 408 (Pa. 2003).  It is not our role, as a reviewing court, to reweigh the evidence and substitute our judgment for that of the fact-finder. ***Commonwealth v. Mitchell***, 902 A.2d 430, 449 (Pa. 2006).

As discussed ***supra***, the evidence was sufficient to support Vangjeli's convictions. Moreover, the trial court, acting as the finder of fact, found credible K.O.'s sworn testimony stating she saw the black handle of a firearm in the waistband of Vangjeli's pants.   Rule 1925(a) Opinion, 4/13/18, at 2.   This testimony, alongside evidence of Vangjeli's access to his brother's firearm, provided the trial court's basis for convicting Vangjeli under Sections 6106 and 6108.   Simply put, the trial court was free to evaluate those statements and "believe all, part of none of . . . [the] testimony." ***Mitchell***, ***supra*** at 902.  It is not our role, as a reviewing court, to reweigh the evidence and substitute our judgment for that of the fact-finder.  ***Id.*** (citation omitted).  Thus, we find this claim meritless.

"If our disposition upsets the overall sentencing scheme of the trial court, we must remand so that the court can restructure its sentence plan." ***Commonwealth v. Thur***, 906 A.2d 552, 569 (Pa. Super. 2006) (citation omitted). "By contrast, if our decision does not alter the overall scheme, there is no need for a remand." ***Id.*** (finding no need to remand because vacating DUI conviction did not disturb sentencing scheme where DUI sentence was concurrent with other terms and did not increase aggregate length of incarceration).

Here, the trial court imposed a term of probation for REAP to be served consecutively to Vangjeli's term of incarceration, and concurrently to the remaining sentences of probation. Vacating the REAP conviction and its attendant sentence does not affect the length of Vanjeli's aggregate term of imprisonment or the overall sentencing scheme. Hence, we conclude it is unnecessary to remand the matter for resentencing.

Judgment of sentence vacated with respect to Vangjeli's REAP conviction and affirmed on all other counts.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/28/19

- 26 -