J-S05038-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RYAN RICHARD, | : | |
| Appellant | : | |
| | : | No. 1365 MDA 2019 |

Appeal from the PCRA Order Entered July 15, 2019
in the Court of Common Pleas of Centre County
Criminal Division at No(s):  CP-14-CR-0000708-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RYAN RICHARD, | : | |
| Appellant | : | No. 1366 MDA 2019 |

Appeal from the PCRA Order Entered July 15, 2019
in the Court of Common Pleas of Centre County
Criminal Division at No(s):  CP-14-CR-0000711-2013

BEFORE:  SHOGAN, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED SEPTEMBER 29, 2020**

Ryan Richard ("Richard") appeals from the Order denying his first Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"). ***See*** 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

Richard was convicted in 1989 of third-degree murder after he killed his wife at their home in Berks County.  At some point while serving his sentence, Richard mailed two letters to his mother.  The first letter, which was undated

and addressed to his mother (the "First Letter"), contained threats directed at some of the individuals involved in the criminal proceedings for his 1989 murder conviction. The First Letter also contained a plan to break into a random home, kill the individuals inside, and kill any police officers who might attempt to apprehend him upon his release. The second letter, which was undated and addressed to himself (the "Hit List Letter"), contained death threats directed at multiple individuals involved in the 1989 murder conviction, as well as Richard's specific plans for how he would kill several of the individuals upon his release.

At some point following the death of Richard's mother on January 20, 2010, the letters were discovered by Richard's brother, Russell Richard ("Russell"). Russell provided the letters to the Pennsylvania State Police, who alerted the individuals named in the letters. In 2012, upon his release from prison, Richard was arrested and charged with multiple counts of terroristic threats and harassment[1] related to the letters, filed at docket number CP-14-CR-0016-2013 (the "Letters Charges"). While awaiting trial on the Letters Charges, Richard filed a Motion to Quash, arguing that the letters were written outside of the five-year statute of limitations. On April 2, 2013, the trial court held a hearing on the Motion, at which Russell testified.

---

[1] 18 Pa.C.S.A. §§ 2706(a)(1), 2709(a)(1).

Two days later, Richard called his estranged daughter from the prison, and made threatening remarks toward her and Russell regarding Russell's testimony. Following the call, Richard was charged with two additional counts of terroristic threats, filed at docket number CP-13-CR-0711-2013, and one count of witness intimidation,[2] filed at docket number CP-14-CR-0708-2013 (collectively, the "Telephone Charges").

The Letters Charges and the Telephone Charges were consolidated for trial over Richard's objection. On June 13, 2013, following a hearing, the trial court denied Richard's Motion to Quash the Letters Charges. The trial court determined that, though it was unclear when exactly Richard wrote the letters, or when the letters were sent, sufficient evidence existed suggesting that the letters had been sent within the statute of limitations, *i.e.*, within five years prior to December 13, 2012.

Before trial, but after the hearing on Richard's Motion to Quash the Letters Charges, a second copy of the First Letter was located. This copy of the First Letter contained the date "July 5, 2007" handwritten at the top. Russell informed authorities that he believed that the date was written by his mother, which she would often do when receiving a letter from Richard.

After receiving the dated copy of the First Letter, Richard filed a supplemental Motion to dismiss the Letters Charges, again on the basis of the

---

[2] 18 Pa.C.S.A. § 4952(a)(3).

statute of limitations. The trial court held an evidentiary hearing on October 28, 2013, during which Russell, Trooper Swank, and several other State Troopers testified. On November 20, 2013, the trial court issued an Opinion and Order denying Richard's supplemental Motion.[3]

The trial for the charges at all three docket numbers took place in November 2014, wherein the Commonwealth's case focused largely on the contents of the letters. At the close of the Commonwealth's case, Richard filed a Motion for acquittal on the Letters Charges on statute of limitations grounds. The trial court granted Richard's Motion for acquittal on the charges related to the First Letter, and denied his Motion as to the charges related to the Hit List Letter.[4] The jury ultimately acquitted Richard of the charges related to the Hit List Letter, and convicted him on the charges related to the telephone threats. On August 6, 2015, the trial court sentenced Richard to

---

[3] Prior to trial, Richard filed a Motion *in limine*, to preclude the Commonwealth from arguing its theory that the statute of limitations was not triggered until the threats were communicated to the intended targets, rather than when the threats were written. The trial court granted Richard's Motion. The Commonwealth filed an interlocutory appeal, and this Court affirmed the trial court, holding that the statute of limitations was triggered when the letters were sent. *See Commonwealth v. Richard*, 105 A.3d 801 (Pa. Super. 2014) (unpublished memorandum).

[4] The Commonwealth conceded at trial that the evidence showed the First Letter was, in fact, sent in July 2007. N.T. (Trial), 11/14/14, at 279-83.

serve an aggregate term of 7 to 17 years in prison, with credit for 849 days of time served.

This Court affirmed Richard's judgment of sentence.[5]  Richard did not seek allowance of appeal in the Supreme Court.  Richard filed the instant, timely, *pro se* Petition for relief pursuant to the PCRA on January 6, 2017.  The PCRA court appointed Richard counsel, who filed an Amended Petition on November 21, 2017.  A hearing was conducted over two days in November 2018.  On July 15, 2019, the PCRA court entered an Order denying the Petition.  Richard filed a Motion for reconsideration, which the PCRA court denied without a hearing.  On August 13, 2019, Richard filed two separate, but otherwise identical, Notices of Appeal, with each Notice listing docket numbers CP-14-CR-0708-2013 and CP-13-CR-0711-2013.  On September 9, 2019, this Court directed Richard to show cause why we should not quash his appeal based on his apparent failure to comply with our Supreme Court's ruling in **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018) (stating that "when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed.  The failure to do so will result in quashal of the appeal."  (citing Pa.R.A.P. 341)).  **See also Commonwealth v. Creese**, 216 A.3d 1142, 1144 (Pa. Super. 2019) (quashing an appeal pursuant to **Walker** where the appellant filed a separate

---

[5] **See Commonwealth v. Richard**, 150 A.3d 504 (Pa. Super. 2016).

- 5 -

notice of appeal at each docket number, but where each notice of appeal listed multiple docket numbers). Richard filed a Response, and on September 26, 2019, this Court discharged the show cause Order and referred the issue to the merits panel.

Richard raises the following questions for our review:

I. Did the trial court commit an abuse of discretion and/or error of law in finding that the [Commonwealth] did not engage in prosecutorial misconduct so as to bar a retrial or entitle [Richard] to a new trial?

II. Did the trial court commit an error of law and/or abuse of discretion in not finding [Richard's] trial counsel ineffective for the following reasons:

> a. Allowing a written confession (the "hit list["]) to go out with the jury in violation of applicable rules of criminal procedure[;]
>
> b. Failing to attack the prosecution of [Richard] (related to the letters authored by [Richard]) on jurisdictional grounds[;]
>
> c. Failing to request a jury instruction on terroristic threats relating to spur of the moment statements and transitory anger[;]
>
> d. Failing to raise on direct appeal the trial court's ruling on a Commonwealth Motion *in limine* which prohibited [Richard] from introducing the balance of [Richard's] statement made to a State Trooper[; and]
>
> e. Failure to object to prosecutorial comments regarding [Richard?]

Brief for Appellant at 4-5.

Prior to addressing the merits of Richard's argument, we must first determine whether his counseled appeal complies with our appellate rules of

procedure.  While Richard's appeal was pending before this Court, we issued our decisions in **Commonwealth v. Johnson**, 2020 PA Super 164, at *12 (Pa. Super. filed July 9, 2020) (*en banc*) and **Commonwealth v. Larkin**, 2020 PA Super 163, at *3 (Pa. Super. filed July 9, 2020) (*en banc*), in which this Court held that where separate notices of appeal are filed at each docket number, the inclusion of multiple docket numbers on each notice of appeal does not invalidate the notices of appeal, thereby overruling **Creese**, and declined to quash the appeals.  In this case, Richard filed two separate Notices of Appeal, one at each docket, and each identifying docket numbers CP-14-CR-0708-2013 and CP-13-CR-0711-2013.  Pursuant to **Johnson** and **Larkin**, we conclude that Richard has complied with the dictates of **Walker** and Pa.R.A.P. 341.

However, we must also determine whether we have jurisdiction to consider all of Richard's claims.  **See Commonwealth v. Gentry**, 101 A.3d 813, 816 (Pa. Super. 2014) ("[the Superior Court] may raise issues concerning jurisdiction *sua sponte*").  Here, Richard's two Notices of Appeal list the two docket numbers (CP-14-CR-0708-2013 and CP-13-CR-0711-2013) related to the Telephone Charges.  He did not file a Notice of Appeal at docket number CP-14-CR-0016-2013 – which involved the Letters Charges.  Accordingly, we do not have jurisdiction to consider Richard's claim regarding prosecutorial misconduct, or his ineffective assistance claims related to the Hit List Letter going out with the jury, jurisdictional issues related to the letters,

and the Commonwealth's Motion *in limine* related to Trooper Swank's testimony regarding the letters. **Commonwealth v. Hardy**, 99 A.3d 577, 578-79 (Pa. Super. 2014) (concluding that our appellate jurisdiction was limited to reviewing the judgment of sentence at the docket number listed by the defendant on his notice of appeal, and that we lacked jurisdiction to review any claim related to the judgment of sentence at any other docket number).

In his first claim within our jurisdiction, Richard argues that trial counsel was ineffective in failing to request a **Kidd** instruction[6] for the terroristic threats charge. Brief for Appellant at 39. Richard points to trial counsel's recognition that he was aware of the existence of a **Kidd** instruction, and his lack of explanation as to why he did not request one. **Id.** at 39-40. Though Richard recognizes that the telephone threats at issue were made several days after the hearing, he asserts that a **Kidd** instruction was nevertheless warranted because he was in prison at the time the telephone calls were made. **Id.** at 40-41. Accordingly, he could not make an immediate phone

---

[6] **Commonwealth v. Kidd**, 442 A.2d 826 (Pa. Super. 1982). In **Kidd**, the defendant was arrested for public drunkenness and, while being transported to the hospital for treatment, continuously yelled obscenities at police officers, including a threat to "kill them, machine gun them, if given a chance." **Kidd**, 442 A.2d at 827. This Court concluded that the defendant did not demonstrate an intent to terrorize the arresting officers, as he was merely expressing transitory anger, which the terroristic threats statute was not intended to criminalize. **Id. Cf. Commonwealth v. Tizer**, 684 A.2d 597, 600-01 (Pa. Super. 1996) (concluding that a defendant's threats were not made in a spur-of-the-moment transitory anger when the victim did not threaten or provoke the defendant, the defendant initiated the interaction, and the threats were not made during the course of a heated argument).

call to express his displeasure, and was required to wait several days before having the opportunity to do so. *Id.* According to Richard, "the jurors should have been allowed to conclude whether the statements were spur of the moment and/or made from transitory anger[,]" and, as a result, a *Kidd* instruction was necessary. *Id.* at 41.

Our standard of review related to claims of ineffective assistance of counsel is well settled:

> To be entitled to relief on an ineffectiveness claim, [an appellant] must prove the underlying claim is of arguable merit, counsel's performance lacked a reasonable basis, and counsel's ineffectiveness caused him prejudice. Prejudice in the context of ineffective assistance of counsel means demonstrating there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. This standard is the same in the PCRA context as when ineffectiveness claims are raised on direct review. Failure to establish any prong of the test will defeat an ineffectiveness claim.

*Commonwealth v. Keaton*, 45 A.3d 1050, 1060-61 (Pa. 2012) (footnote omitted). Further, we generally presume that counsel is effective. *Commonwealth v. Cox*, 983 A.2d 666, 678 (Pa. 2009).

In reviewing a trial court's jury instructions,

> [a] jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the [defendant] was prejudiced by that refusal.

***Commonwealth v. Sandusky***, 77 A.3d 663, 667 (Pa. Super. 2013) (citation

omitted).

The PCRA court addressed this claim as follows:

Unlike the cases that turn on the spur-of-the-moment rule, in this case, the context surrounding the threats at issue were not shown to involve a chance encounter or a heated exchange. To the contrary, the underlying allegations were that [Richard] had connived to make an unrecorded telephone call from the jail to his estranged daughter, that the unrecorded nature of the call violated correctional facility policy, and that the call took place two days after the alleged inciting event. It was in the context of that pre-planned call that [Richard] made the threatening remarks at issue. These facts are not at all analogous to the cases applying the spur-of-the-moment rule, and the [PCRA c]ourt questions whether a specific instruction in this regard would have been given even had it been requested.

Furthermore, as noted by the Commonwealth, the jury instruction given by the trial court with respect to the terroristic threats charge and the witness intimidation charge included instructions on intent, instructing the jury that it was the Commonwealth's burden to prove intent. Thus, the subject matter to be covered by the "***Kidd*** instruction" was covered in the general charge, and [Richard] cannot meet his burden of proving actual prejudice as a result of trial counsel's alleged failure.

PCRA Court Opinion, 7/15/19, 18-19.

We discern no abuse of discretion in the PCRA court's conclusion, which

is supported by the record. In this case, Richard's telephone threats to his

brother and daughter were made several days after the incident which

provoked him, *i.e.*, the testimony made against Richard. Because Richard's

threats were not made in a spur-of-the-moment bout of anger, we cannot

conclude that Richard's ***Kidd*** claim has arguable merit, and the PCRA court

did not abuse its discretion in concluding that counsel was not ineffective in

- 10 -

not requesting a **Kidd** instruction. **See Commonwealth v. Spotz**, 18 A.3d 244, 299-300 (Pa. 2011) (stating that counsel is not ineffective for failing to raise a jury instruction that the defendant was not entitled to).

Next, Richard argues that trial counsel was ineffective in failing to object to various prejudicial comments made by the prosecutor during trial. Brief for Appellant at 44. Richard asserts that, on a number of occasions during the trial, the Commonwealth referred to him as "the monster sitting inside his cage," and a liar. **Id.** According to Richard, the Commonwealth's "engage[ment] in a course of conduct to dehumanize" him created a fixed bias, hostility, and collective fear in the minds of the jury. **Id.** at 45. Richard implores us to conclude that the prejudice he experienced in these instances—combined with the other instances of prejudice discussed above—creates sufficient cumulative prejudice to grant him relief. **Id.** at 45-46.

> [A] claim of ineffective assistance grounded in counsel's failure to object to a prosecutor's comments may succeed when the petitioner demonstrates that the prosecutor's [comments] violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process. … A prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments …. Reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict.

**Spotz**, 18 A.3d at 288 (Pa. 2011) (internal citations and quotations omitted).

The PCRA court addressed Richard's claim as follows:

> In the present case, although the [PCRA c]ourt agrees the prosecutor's comments crossed the line, particularly with respect to counsel expressing his opinion that [Richard] is a "liar," the [c]ourt does not believe the improper comments were so inflammatory and prejudicial that they would have the unavoidable effect of creating a "fixed bias and hostility" in the minds of the jurors. Looking to the trial outcome, it is evident that the jurors assessed each of the charges separately on their own merits, indicating that the verdict as to the Telephone Charges was not the result of some undue prejudice or fixed bias or hostility. The [c]ourt thus finds [Richard] has failed to demonstrate a right to PCRA relief with respect to this claim.

Trial Court Opinion, 7/15/19, at 21.

We discern no error in the PCRA court's conclusion that Richard failed to establish the requisite prejudice to warrant relief on this claim. In reviewing the trial transcript, we agree with the PCRA court's determination that while certain comments made by the Commonwealth "crossed the line," we note that "[n]ot every unwise, intemperate, or improper remark made by a prosecutor mandates the grant of a new trial." *Spotz*, 18 A.3d at 288. In this case, Richard does not present evidence that the Commonwealth referring to Richard as a "liar" on several occasions created a "fixed bias and hostility" against him in the minds of the jurors. Instead, the record discloses that the jury ably considered each of the charges against Richard despite the Commonwealth's comments and, in fact, returned a not guilty verdict on the charges related to the Hit List Letter. Accordingly, this claim fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>09/29/2020</u>