J-S11006-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
:   PENNSYLVANIA
:
v.                    :
:
:
ROBERT C. GILMORE          :
:
         Appellant       :   No. 624 WDA 2021

Appeal from the Judgment of Sentence Entered April 9, 2021
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0001789-2020

BEFORE: PANELLA, P.J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.:        **FILED: May 3, 2022**

Robert C. Gilmore appeals from the judgment of sentence imposed following his convictions for terroristic threats and unauthorized use of automobiles.[1] Gilmore challenges the sufficiency of the evidence supporting his convictions. We affirm.

On August 6, 2020, Gilmore took the vehicle belonging to his girlfriend, Sepia Stewart, after an argument but failed to return. Stewart reported her vehicle stolen at approximately 7:30 a.m. on August 7, 2020. Gilmore returned to Stewart's house later that afternoon, and the couple argued again. During the altercation, Gilmore stated that he hated Stewart and should punch her in the face. At some point during the argument, Gilmore returned to the

---

[1] *See* 18 Pa.C.S.A. §§ 2706(a)(1), 3928.

vehicle, locked himself inside, and drove away. Gilmore was ultimately arrested outside Stewart's place of employment at approximately 2:00 a.m. on August 8, 2020. Gilmore was charged with terroristic threats, simple assault, unlawful restraint and unauthorized use of automobiles.

At the close of the non-jury trial, the trial court granted Gilmore's motion for judgment of acquittal as to the simple assault charge. The trial court found Gilmore guilty of terroristic threats and unauthorized use of automobiles, and not guilty of unlawful restraint. The court deferred sentencing and ordered the preparation of a pre-sentencing investigation report. On April 9, 2021, the trial court sentenced Gilmore to a term of 10 to 23 months in prison, with credit for time served, followed by two years of probation.

Gilmore filed a post-sentence motion seeking judgments of acquittal as to his terroristic threats and unauthorized use of automobiles convictions. The trial court denied the post-sentence motion, and Gilmore subsequently filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[2, 3]

---

[2] Gilmore purported to appeal from the May 21, 2021 order denying his post-sentence motions; however, Gilmore's appellate brief properly identifies the April 9, 2021 judgment of sentence. *See Commonwealth v. Shamberger*, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) ("In a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions.").

[3] The Commonwealth did not file a brief in this matter.

Gilmore challenges the sufficiency of the evidence supporting his convictions. We review such challenges with great deference to the credibility determinations of the fact finder:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Gause*, 164 A.3d 532, 540-41 (Pa. Super. 2017) (*en banc*) (citation omitted).

Gilmore first challenges the sufficiency of the evidence supporting his terroristic threats conviction. **See** Appellant's Brief at 6. Specifically, Gilmore claims the Commonwealth failed to establish that he intended to terrorize Stewart. **See id.** at 6-7. Gilmore characterizes his threats as "a moment of transitory anger after an unplanned heated conversation[.]" **Id.** at 7.

"A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to … commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. § 2706(a)(1). Section

2706 is not meant to encompass "mere spur-of-the-moment threats which result from anger." 18 Pa.C.S.A. § 2706, Comment. However, anger "does not render a person incapable of forming the intent to terrorize." *Commonwealth v. Walker*, 836 A.2d 999, 1001 (Pa. Super. 2003) (citation omitted). In determining whether a threat was a spur-of-the-moment statement made in the midst of a heated verbal exchange, we consider the totality of the circumstances. *See Commonwealth v. Sexton*, 222 A.3d 405, 418 (Pa. Super. 2019).

As our Court has explained,

[n]either the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense. Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security.

*Commonwealth v. Beasley*, 138 A.3d 39, 46 (Pa. Super. 2016) (citations and internal quotation marks omitted).

Despite Gilmore's characterization of his statements as spur-of-the-moment threats, Stewart's testimony indicates this was not a fleeting argument. Stewart testified that the previous day, she had told Gilmore that he had to move out of Stewart's house because her children did not feel safe with him there. *See* N.T., Non-Jury Trial, 3/1/21, at 8. Gilmore then drove away in Stewart's vehicle. *See id.* On August 7, 2020, at approximately 7:30 a.m., Stewart called police to report her vehicle stolen, as Gilmore had not returned. *See id.* at 5, 14.

Gilmore returned to Stewart's house at approximately 3:00 p.m. ***See id.*** at 5-6. Stewart again told Gilmore that he could no longer live with her. ***See id.*** at 7, 8. Stewart testified that Gilmore was upset and asked "how we were going to work this out." ***Id.*** at 7. According to Stewart, Gilmore then demanded $250 for an efficiency apartment. ***See id.*** at 7-8. Stewart testified that when she told Gilmore she did not have the money to give him, Gilmore was upset and stated that he did not want to be forced to live in the men's shelter. ***See id.*** at 9. The couple continued to argue, and Gilmore told Stewart that he hated her and would punch her in the face. ***See id.*** at 16, 18, 28. Stewart also testified that she and Gilmore had physical altercations in the past and Gilmore had a bad temper. ***See id.*** at 18. Stewart testified that she was afraid of Gilmore. ***See id.*** at 26-27.

The trial court found Stewart's testimony credible, and we will not substitute our judgment for that of the factfinder. ***See*** Trial Court Order, 5/21/21, at 1 (unnumbered). The trial court concluded Gilmore's statement that he would punch Stewart in the face constituted a threat made with the intent to terrorize Gilmore. ***See id.***

Viewing the facts and circumstances of this case in the light most favorable to the Commonwealth as the verdict winner, Gilmore's terroristic threats conviction is supported by the record. The evidence at trial was sufficient to allow a factfinder to conclude that Gilmore's threat was not made in the heat of the moment. The couple's argument began the previous day when Stewart informed Gilmore he needed to move out. Stewart also testified

regarding a history of physical altercations between them. *See Commonwealth v. Kline*, 201 A.3d 1288, 1289, 1291-92 (Pa. Super. 2019) (holding appellant's actions in approaching the complainant's car, with complainant's 6-year-old child inside, and motioning to indicate firing a gun was not a spur-of-the-moment threat, where appellant had stared at complainant and her children as they entered and exited the house for a period of several months). Further, there was no evidence that Gilmore was reacting to any violent conduct by Stewart. *See Commonwealth v. Tizer*, 684 A.2d 597, 601 (Pa. Super. 1996) (concluding that lack of evidence that victim was acting violently was sufficient to negate defendant's claim his threats were caused by heated argument). Accordingly, this claim merits no relief.

Next, Gilmore claims his unauthorized use of automobiles conviction is unsupported by sufficient evidence. *See* Appellant's Brief at 8. Gilmore argues he honestly believed he had permission to drive Stewart's vehicle. *See id.* According to Gilmore, Stewart did not ask him to return the vehicle or keys. *See id.*

Section 3928 provides as follows:

**§ 3928. Unauthorized use of automobiles and other vehicles**

**(a) Offense defined.--**A person is guilty of a misdemeanor of the second degree if he operates the automobile … of another without consent of the owner.

**(b) Defense.--**It is a defense to prosecution under this section that the actor reasonably believed that the owner would have consented to the operation had he known of it.

18 Pa.C.S.A. § 3928.

By invoking the defense set forth at Section 2928(b), Gilmore challenges the evidence supporting a finding of intent. "[A] conviction for unauthorized use of a vehicle must be predicated on proof that the defendant operated the vehicle without the owner's consent and that the defendant knew or had reason to know that he lacked the owner's permission to operate the vehicle." *Commonwealth v. Carson*, 592 A.2d 1318, 1321 (Pa. Super. 1991) (citations omitted). To sustain its burden, the Commonwealth was required to present evidence capable of establishing that Gilmore was reckless regarding Stewart's consent to his use of the vehicle. *See id.* at 1322. The Commonwealth was entitled to establish Gilmore's recklessness through purely circumstantial evidence, as "there is rarely any direct evidence of one's subjective state of mind." *Commonwealth v. Utter*, 421 A.2d 339, 341 (Pa. Super. 1980) (citation omitted).

During the non-jury trial, Stewart testified that Gilmore left in her vehicle on August 6, 2020, after she told Gilmore to move out of her home because her children did not feel safe with him. *See* N.T., Non-Jury Trial, 3/1/21, at 7, 8. Stewart acknowledged that she had given Gilmore permission to use the vehicle that day, but "he was supposed to come right back." *Id.* at 14; *see also id.* at 15 (wherein Stewart explained she had allowed Gilmore to use her vehicle on previous occasions, but Gilmore did not have his own set of car keys). When Gilmore did not return, Stewart reported her vehicle stolen at approximately 7:30 a.m. on August 7, 2020. *See id.* at 5, 13. Stewart

testified that she texted Gilmore during the time he was gone with her vehicle, but Gilmore did not answer her. ***See id.*** at 14.

Gilmore eventually returned to Stewart's home in the afternoon, at which time the couple argued. ***See id.*** at 5-6, 16, 18. Stewart testified that Gilmore once again left in her vehicle. ***See id.*** at 11. Stewart called the police and reported to the responding officer that Gilmore had demanded money from Stewart then fled in her vehicle. ***See id.*** at 12.

The trial court found Stewart's testimony credible and concluded that her testimony was corroborated by the fact that she reported the vehicle as stolen. ***See*** Trial Court Order, 5/21/21, at 1 (unnumbered). The trial court also found Gilmore "was not credible on the issue of his usage of the vehicle on this specific occasion." ***Id.*** We may not disrupt these credibility findings on appeal.

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, as required under our standard of review, we conclude there was sufficient evidence to support Gilmore's conviction of unauthorized use of an automobile. Despite evidence that Stewart had previously granted Gilmore permission to use the vehicle, Stewart's testimony established Gilmore had reason to know he lacked permission to use the vehicle in this instance. The evidence reflects that Gilmore took the vehicle twice, both times after the couple were involved in an altercation arising from Stewart's demand that Gilmore no longer reside with her. The nature of this disagreement is especially important: it is undisputed that these events were precipitated by

the fact that Stewart wanted to end their relationship. **See** N.T., Non-Jury Trial, 3/1/21, at 7 (wherein Stewart testified she told Gilmore they "probably can work this out"). **But see id.** at 7, 9-10, 19 (Stewart repeatedly testified that she told Gilmore he had to return to Philadelphia); 27 (wherein Stewart testified she "could communicate with [] Gilmore because he's locked up. I can't communicate -- I wouldn't want anything to do with [] Gilmore if he was outside."). Additionally, Stewart attempted to contact Gilmore in the time he was gone, and Gilmore did not respond or immediately return to Stewart's residence. All of these factors were circumstantial evidence that Gilmore was reckless with regard to whether he still had Stewart's permission to drive her vehicle. Accordingly, Gilmore is not entitled to relief on this claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/3/2022