J-S35030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| | : | |
| JEREMIE ADAM CZEKALSKI | : | |
| | : | |
| Appellant | : | |
| | : | No. 1519 MDA 2022 |
| | : | |
| | : | |
| | : | |
| | : | |

Appeal from the Judgment of Sentence Entered October 21, 2021
In the Court of Common Pleas of Snyder County Civil Division at No(s):
CP-55-CR-0000415-2020

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                   **FILED:  JANUARY 6, 2023**

Appellant, Jeremie Czekalski, appeals from the judgment of sentence of an aggregate term of 16 months' to 5 years' imprisonment, imposed after he was convicted of one count each of simple assault[1] and terroristic threats.[2] Appellant challenges the sufficiency of the evidence to sustain his conviction for terroristic threats.  We affirm.

Appellant's convictions stem from the following occurrences, which we glean from the record.  In the early afternoon on October 22, 2020, Officer

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2701(a)(1).

[2] 18 Pa.C.S. § 2706(a)(1).

David Shaffer and Chief Jordan from the Middleburg Police Department responded to a third-party call regarding domestic violence at Appellant's residence in Beavertown, Pennsylvania, where he resided with Jessica Clinger, the victim. N.T., 9/28/21, at 18-19.[3] Upon their arrival, Officer Shaffer knocked on the front door of Appellant's residence, and Chief Jordan knocked on the back door. *Id.* at 19. Appellant came to the front door and stated that he couldn't use the front door, so the officers made contact with him at the back door. *Id.* After informing Appellant that they were responding to a domestic violence call, Appellant told Officer Shaffer that Ms. Clinger "was crazy," and admitted "that they did have a verbal dispute, [but] nothing physical." *Id.* at 20. He stated that there was physical violence in the past, but insisted that on this particular day, he walked away. *Id.* "[H]e was trying to change his ways." *Id.* Appellant added, "we fight all the time[,] but I didn't hurt her." *Id.*

Officer Shaffer testified that Appellant appeared "really nervous[,] shaky, sweaty" and that "sweat was dripping off of his face, [which] led [him] to believe there was something more going on." *Id.* He also observed that Appellant was holding two cell phones, which he found odd, but when he questioned Appellant about the phones, Appellant stated that they were both his. *Id.* at 20-21. Officer Shaffer then asked Appellant for Ms. Clinger's phone number so that he could contact her to make sure that she was okay. *Id.* at

_____

[3] The call was made by Theresa Walker, a friend of the victim. *Id.* at 19.

20. When Officer Shaffer called Ms. Clinger's number, it rang one of the phones Appellant was holding. *Id.* at 21. Appellant then admitted that one of the phones was Ms. Clinger's and stated that he only had it because she threw it at him. *Id.*

Based on Appellant's behavior and the fact that he was blocking the door with his body, Officer Shaffer testified:

> [W]e had concerns that [Ms. Clinger] still may be inside the residence and [that] she may be hurt. We asked for consent to go in the house and look. He allowed us to go in. In fact, he led me into the house. Upon going in the back door, there's like an enclosed porch, I observed blood on the floor.[4] We went into the kitchen, there was stuff that was smashed, dishes, cups that were smashed on the floor and on the counter. He then led me into the living room where I seen [*sic*] a broken windowpane laying [*sic*] on the floor.
>
> From there, I asked if I could go upstairs. He was reluctant, didn't really want me to go upstairs, and then he did finally state I have nothing to hide, you can follow me. We went upstairs, searched the second floor. When I went into the bathroom, he again showed some nervousness. In fact, he body[-]blocked me from going into the bathroom and then told me that he wanted me to leave.

*Id.* at 21-22. The officers did not find Ms. Clinger during their search of the residence. *Id.* at 22.

---

[4] On cross-examination, Officer Shaffer admitted that Appellant told him the substance on the floor was not blood, that Officer Shaffer did not take a sample of it, and that it was never confirmed "scientifically" that it was blood. *Id.* at 28.

Later that day, Officer Shaffer made contact with Ms. Clinger by phone. He recounted her description of the events from earlier that afternoon as follows:

> [Appellant] woke up, he was in a bad mood…. She stated that he was in a bad mood, claimed that his back hurt. There was an argument, I believe, over money[,] which really started it. And during the altercation, he grabbed her, grabbed her by her ponytail, swung her around, punched her six or seven times in the side of the head, and also choked her[,] what she described to me as a head lock.

*Id.* at 22. The following day, Ms. Clinger appeared at the police station to be interviewed by Officer Shaffer, and "[s]he claimed that her face was sore." *Id.* at 23. Officer Shaffer observed that she had marks on her face and neck. *Id.* Ms. Clinger recalled that "during the incident, [Appellant] grabbed her by the ponytail, threw her on the ground, jumped on top of her, and just basically began to punch her multiple times in the head." *Id.*

During cross-examination, Officer Shaffer stated that he charged Appellant with terroristic threats because Ms. Clinger "described that [Appellant] made threats to kill her[,] stating that he was going to kill her." *Id.* at 41. This statement was followed by the following exchange between Appellant's counsel and Officer Shaffer:

[Appellant's Counsel]: He was going to kill her?

[Officer Shaffer]: Correct.

[Appellant's Counsel]: In fact, what you put in your report when you transcribed it was: "Did he say at any point that he was going to kill you?" "He does all the time." "Okay[,] but yesterday

did he say it?" And her response was: "No, no, no, no, no, not yesterday[,"] correct?

[Officer Shaffer]: Not yesterday[,] but there's several incidents[,] so if you want me to get into the other incidents[,] we can go there.

[Appellant's Counsel]: And based on the information that you gained in this interview and your investigation, you filled out what was called an Affidavit of Probable Cause?

[Officer Shaffer]: Yes, that's correct[. T]hat's with any charge.

[Appellant's Counsel]: And in your Affidavit of Probable Cause you put: "Clinger stated that during the altercation [Appellant] made threats to kill her[,"] correct?

[Officer Shaffer]: Correct, and she did tell me that. Whether that was in the transcript or not, there was also other interviews off-transcript. So[,] if it was in there, it was said.

[Appellant's Counsel]: Just not in the transcript, just not on the recording?

[Officer Shaffer]: Correct. There was an interview the day prior as well that was not recorded, it was on a phone call.

*Id.* at 41-42.

At trial, Ms. Clinger testified regarding the physical altercation that took place between her and Appellant on October 22, 2020. When asked whether Appellant was saying anything during the incident, she replied, "He was calling me a bitch, he threatened to kill me, I wasn't allowed to leave…." *Id.* at 57. She further stated that she was concerned for her safety and that she believed Appellant when he was threatening to kill her. *Id.* at 64. At some point during

- 5 -

the incident, Ms. Clinger went into the back room, away from Appellant, and called her friend, Kaitlin. *Id.* at 58. She explained, "[t]hat's when he tried to grab the phone out of my hand, grabbed me by the neck, threw me on the floor, and I kicked him to get him off of me[,] and then Theresa was contacted to contact the police for me." *Id. See also id.* at 48 (Ms. Walker's explaining that after she received a phone call from Kaitlin about their mutual friend, Ms. Clinger, she called the police and asked them to do a welfare check at Ms. Clinger's residence). After kicking Appellant off her, Ms. Clinger stated that she grabbed her stuff and went outside to her car, but she was unable to leave because Appellant had "unhooked" her car battery. *Id.* at 62-63.

On cross-examination, the following colloquy took place between Appellant's counsel and Ms. Clinger:

| [Appellant's Counsel]: | It's your testimony that on October 22nd, 2020, you and my client had a physical altercation? |
|---|---|
| [Ms. Clinger]: | Yes, sir. |
| [Appellant's Counsel]: | During that altercation[,] you said my client threatened to kill you, correct? |
| [Ms. Clinger]: | Yes, sir. |
| [Appellant's Counsel]: | After that altercation[,] the following day[,] you went to the police department, correct? |
| [Ms. Clinger]: | Yes, sir. |
| [Appellant's Counsel]: | And you gave an audio recording to Police Officer Shaffer, correct? |
| [Ms. Clinger]: | Yes, sir. |

[Appellant's Counsel]:     And do you remember Police Officer Shaffer saying[, "D]id he say at any point he was going to kill you[?" A]nd then[, "O]kay[,] but yesterday did he say it[?"] [A]nd you said[, "]no, no, no, not yesterday?["]

[Ms. Clinger]:             I don't recall.

[Appellant's Counsel]:     You don't recall that?

[Ms. Clinger]:             No.

*Id.* at 66-67.

Based on the aforementioned evidence presented at a jury trial on September 28, 2021, Appellant was found guilty of one count of simple assault and one count of terroristic threats with the intent to terrorize another. On October 21, 2021, the trial court sentenced him to an aggregate term of 16 months' to 5 years' imprisonment. Appellant did not file a post-sentence motion.

On November 19, 2021, Appellant filed a timely notice of appeal, followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors on appeal. In his Rule 1925(b) statement, Appellant asserted that the jury lacked sufficient evidence to find him guilty of terroristic threats and that the jury's verdict of guilty on terroristic threats was against the weight of the evidence. However, Appellant does not pursue the weight of the evidence argument on appeal; thus, we deem that claim to be waived. ***See Commonwealth v. Long***, 786 A.2d 237, 239 n.3 (Pa. Super. 2001) ("Generally, questions not presented in the 'Statement of Questions Involved' are deemed waived.") (citation omitted). Herein, Appellant presents the

following sole issue for our review: "Whether there existed sufficient evidence to find [Appellant] guilty of terroristic threats[?]" Appellant's Brief at 4.

To begin, we note our standard of review:

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011) (citations omitted). Moreover, "[t]he evidence need not preclude every possibility of innocence[,] and the fact-finder is free to believe all, part, or none of the evidence presented." *Commonwealth v. Coleman*, 130 A.3d 38, 41 (Pa. Super. 2015) (internal quotation marks and citation omitted).

Appellant challenges the sufficiency of evidence to support his conviction of terroristic threats under 18 Pa.C.S. § 2706(a)(1), which states: "A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to … commit any crime of violence with intent to terrorize another[.]" *Id.* As this Court has previously explained, for a defendant to be convicted of terroristic threats,

"the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror." *Commonwealth v. Tizer*, … 684 A.2d 597, 600 ([Pa. Super.] 1996). "Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the

offense." ***In re J.H.***, 797 A.2d 260, 262 (Pa. Super. 2002). "Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." ***Tizer***, 684 A.2d at 600.

***Commonwealth v. Beasley***, 138 A.3d 39, 46 (Pa. Super. 2016) (quoting

***Commonwealth v. Reynolds***, 835 A.2d 720, 730 (Pa. Super. 2003)).

Here, Appellant asserts that the evidence was insufficient to support his terroristic threats conviction because, on direct examination, Officer Shaffer "at no time noted [that Appellant] threatened the victim." Appellant's Brief at 8. "In fact, in the officer's own report[,] he wrote that he asked [Ms. Clinger] during the interview if [Appellant] ever threatened to kill [her,]" and she responded, "No, no, no, no, not yesterday." ***Id.*** Appellant argues that "[e]ven on cross[-]examination[,] the officer first attempted to speak of 'other occasions.' However, other occasions were not charged. When recognizing his foley[,] … Officer [Shaffer] then stated the victim told him outside the interview" that Appellant had threatened to kill her. ***Id.*** at 8-9. Appellant does acknowledge Ms. Clinger's testimony that he threatened to kill her; however, he notes that when asked about Officer Shaffer's report, "she conveniently could not recall giving the interview." ***Id.*** at 9. Appellant concludes that, even in viewing the evidence in a light most favorable to the Commonwealth, there is clear doubt as to whether Appellant ever made any threat to Ms. Clinger on the date in question. ***Id.***

The Commonwealth counters that it presented sufficient evidence at trial to support the jury's finding Appellant guilty of the crime of terroristic threats.

Commonwealth's Brief at 1.  In support of its argument, the Commonwealth

states:

> [Ms. Clinger] testified[,] … "[Appellant] was calling me a bitch, he threatened to kill me, I wasn't allowed to leave, and then it went into the back room."  [She] affirmed her testimony on cross-examination and explained that Appellant threatened to kill her during an altercation the two of them had.  [Ms. Clinger] further testified about the assault that happened subsequent to the threat.  The assault included Appellant punching [her] multiple times and also placing his hands around [her] throat.  [Officer Shaffer] also testified that [Ms. Clinger] had told [him] that … Appellant threatened to kill her.  Clearly, the Commonwealth has met both elements of the [terroristic threats] offense: a threat was made to kill the victim and that threat was communicated with the intent to terrorize or [with] reckless disregard for causing terror.  The jury clearly found the victim's testimony and the testimony of the police officer to be credible.

*Id.* at 3.

> Likewise, the trial court opined:

> At trial, the Commonwealth called three … witnesses[:] the police officer, the victim[,] and a friend of the victim.  The victim, [Ms.] Clinger[,] testified that "he was calling me a bitch, he threatened to kill me, I wasn't allowed to leave…."  In addition, during cross[-]examination, counsel for [Appellant] asked Ms. Clinger[,] "during that alteration [*sic*] you said my client threatened to kill you[,] correct?"  Ms. Clinger answered[,] "yes, sir."  Ms. Clinger then went on to testify about [Appellant] striking her multiple times, calling her names and disconnecting her car battery to prevent her from leaving.

> Obviously[,] the jury believed the victim's testimony and the victim's testimony supports the jury's verdict.

Trial Court Opinion, 1/24/22, at 2 (citation to record omitted).  We agree.

Appellant's argument merely points to self-serving, contradictory

testimony regarding whether he threatened to harm Ms. Clinger on the date

in question. It is well-settled that "the jury is the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses." ***Commonwealth v. Jacoby***, 170 A.3d 1065, 1080 (Pa. 2017). ***See also id.*** at 1081 ("Issues of witness credibility include questions of inconsistent testimony…."). "A jury is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit." ***Id.*** Appellant is essentially asking this Court to re-weigh the evidence, which is beyond our scope of review. ***See Commonwealth v. Rodriguez***, 141 A.3d 523, 525 (Pa. Super. 2016) ("It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder.").

Here, the jury was free to resolve any inconsistencies in the evidence regarding whether Appellant threatened Ms. Clinger on the date in question in the manner which it saw fit. ***See Jacoby***, ***supra***. There is sufficient evidence in the record to support the jury's finding that Appellant did threaten Ms. Clinger during the altercation on that date. ***See*** N.T. at 57 ("[H]e threatened to kill me, I wasn't allowed to leave…."); ***id.*** at 66 (Ms. Clinger's confirming her testimony that Appellant threatened to kill her during the altercation on October 22, 2020); ***id.*** at 42 (Officer Shaffer's confirming his Affidavit of Probable Cause, which indicated that Ms. Clinger "stated that during the altercation [Appellant] made threats to kill her"). Moreover, it was reasonable for the jury to determine that Appellant's words, in context with his violent conduct, were made with the intent to terrorize Ms. Clinger. ***See Commonwealth v. Butcher***, 644 A.2d 174, 176 (Pa. Super. 1994)

(determining the appellant's words and conduct, when viewed together in context, could be reasonably interpreted as a threat to assault and/or an intent to terrorize the victim).

Based on our review of the facts in the light most favorable to the Commonwealth as the verdict winner, we conclude there was sufficient evidence to support the jury's finding that Appellant committed terroristic threats. Therefore, we uphold Appellant's conviction.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/06/2023