J-S02005-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DERRICK STEWART | : | |
| | : | |
| Appellant | : | No. 205 EDA 2025 |

Appeal from the Judgment of Sentence Entered December 18, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000076-2023

BEFORE: NICHOLS, J., MURRAY, J., and BENDER, P.J.E.

MEMORANDUM BY NICHOLS, J.: **FILED MAY 12, 2026**

Appellant Derrick Stewart appeals from the judgment of sentence imposed following his convictions for two counts of terroristic threats, two counts of harassment, criminal attempt - terroristic threats, and criminal attempt - harassment.[1] Appellant's counsel (Counsel) has filed a petition to withdraw and an ***Anders***/***Santiago*** brief.[2] After review, we grant Counsel's petition to withdraw and affirm Appellant's judgment of sentence.

The trial court summarized the underlying facts of this matter as follows:

[Appellant] sent three letters to the chambers of the Honorable Roxanne Covington, a judge in the Philadelphia Court of Common Pleas, which contained explicit threats to cause physical harm to Judge Covington. Two of the letters were received by Judge Covington's staff and read by Judge Covington. One letter was

---

[1] Pa.C.S. 18 §§ 2706(a)(1), 2709(a)(4), and 901(a), respectively.

[2] ***Anders v. California***, 386 U.S. 738 (1967); ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).

intercepted by the prison before being mailed to Judge Covington. The letters were sent from state Correctional Institutions where [Appellant] was an inmate. [Appellant] used the names and inmate numbers of three other inmates to conceal his identity.

On December 17, 2019, Denise Della Valla, secretary to the Judge Covington received an envelope and letter on prison stationary addressed to Judge Covington with the name Tram Quakenbush at State Correctional Institution ("SCI") Camp Hill on the envelope as sender. Della Valla testified that *ex parte* letters received by chambers are not reviewed by the judge. Judge Covington's staff opens the inmate communications, reviews the contents, then date stamps and files each communication received. This letter contained explicit threats of violence to Judge Covington[3] . . . Della Valia immediately went to the courtroom and interrupted the court session to show Judge Covington the letter. Judge Covington read the letter and was visibly upset and shaken. Judge Covington recessed her court session and immediately notified the sheriffs at the courthouse and called the police. ***Id.*** at 48, 50, 53, 71-72.

On July 13, 2020, Della Valla received another envelope and letter on prison stationery addressed to Judge Covington. Della Valla recognized the handwriting as being similar to the handwriting from the December 17, 2019 letter. This envelope had the name Darryl Medley at SCI Chester on the envelope as sender. Dalla Valla read the letter. It contained lewd, explicit threats of violence to Judge Covington and her family members. One such threat was "If I had a gun, I would kill you." [Appellant] wrote in the letter that the name on the envelope was not his real name. Dalla Valla went to the courtroom to inform Judge Covington. Judge Covington read the letter and became startled, upset and afraid. Judge Covington testified that the tone and contents of the letter were similar to the December 17, 2019 letter. Judge Covington reported receipt of the letter to the sheriff deputies at the courthouse and to the police.

On August 6, 2020, a third letter addressed to Judge Covington containing threats of physical harm was confiscated from the mailroom at SCI at SCI Chester. The name on the envelope was Tito DeJesus at SCI Chester. This letter referenced a recent

_____

[3] We note that Appellant's letter to Judge Covington contained racist and sexually explicit remarks which we will not repeat here.

shooting and killing of a federal judge's husband and son that occurred at that judge's residence. [Appellant] wrote: "I know where you live at, bitch. You're next." *Id.* at 78; N.T. 10/02/2025 at 39, 41.

Upon receiving the first two letters and being informed about the third letter, Judge Covington had her staff review her files and court dockets to ascertain if any of the individuals whose names appeared on the envelopes containing the threatening letters ever appeared before her. Judge Covington's staff found no record that those individuals appeared before Judge Covington. At trial, Judge Covington testified that following a hearing on October 21, 2019 she sentenced [Appellant] to a term of incarceration for violating probation. Judge Covington recalled that during [Appellant's] sentencing hearing, [Appellant's] demeanor and behavior unnerved her. Judge Covington further recalled that throughout the hearing, [Appellant's] glare towards her was menacing and intense. N.T. 10/01/2024 at 66-67, 73, 82.

2. Police Investigation of the Source of the Letter

Lori Eason, now retired captain of intelligence gathering at SCI Chester was assigned to investigate the identity of the inmate who was mailing threatening letters to Judge Covington. Eason received four letters confiscated by SCI Chester mail inspector Brian Flinchbaugh that were deposited in the mailbox of the B housing unit at SCI Chester. Flinchbaugh confiscated three letters written by [Appellant], with his name appearing on each envelope as the sender, and a fourth letter that was addressed to Judge Covington with the name Tito DeJesus on the envelope as the sender. Flinchbaugh testified that he observed similar handwriting on the four letters. Flinchbaugh also observed, while sorting the mail from the B housing unit, that the four letters were in close proximity to the other. One of the letters was addressed to Judge Covington with the name Tito DeJesus written on the envelope at the return address. The three other envelopes and letters contained [Appellant's] name and inmate number. The letters with [Appellant's] name contained a message to his mother, a request to the prison, and a response to a magazine advertisement.

Eason reviewed [Appellant's] prisoner information in the Department of Corrections ("DOC") DOCNet computer system and [Appellant's] integrated case summary. The DOC records reviewed by Eason revealed that [Appellant] received a sentence

of state prison time from Judge Covington. The records also revealed that [Appellant] was an inmate at SCI Camp Hill from November 15, 2019 to January 3, 2020, when the first letter was sent to Judge Covington, and that [Appellant] was inmate at SCI Chester from January 3, 2020 through August 6, 2020, during the time the second and third letters were sent to Judge Covington.

Eason also reviewed DOC records relating to Travis Quakenbush, a current inmate at SCI Camp Hill, which was the name that appeared on the envelope that contained the first threatening letter to Judge Covington. Eason confirmed that Quakenbush was an inmate at SCI Camp Hill at the time the letter was mailed, but Quakenbush never had a case before Judge Covington. Eason was unable to conduct an interview with Quackenbush because he was not an inmate at SCI Chester.

Eason interviewed Daryl Medley, an inmate at SCI Chester since 2017, whose name was written on the envelope containing the second threatening letter sent to Judge Covington. At the time Eason interviewed him, Medley was under investigation for writing inmate requests slips and sending romantic, non-threatening messages to female employees of SCI Chester. Medley never had a case before Judge Covington. Eason also observed that the handwriting on Medley's messages was different than the handwriting on the four letters confiscated by the mailroom.

Eason interviewed Tito DeJesus, an inmate at SCI Chester – whose name appeared on the third envelope containing the third threatening letter addressed to Judge Covington – in her office at SCI Chester. Dejesus told Eason that he has difficultly reading and writing both English and Spanish. Eason's investigation also found that DeJesus was not sentenced by Judge Covington, nor was he housed in the unit from which the letters, including the one with his name, were mailed.

3. The Forensic Evidence Linking [Appellant] to the Letters

Handwriting expert Officer Kevin Dwyer of the Philadelphia Police Department's Document Examination reviewed the envelopes and letters confiscated by the SCI Chester mailroom, the envelope and letter with the name Travis Quackenbush, and prior pre-trial filings from [Appellant,] Officer Dwyer also obtained a voluntary handwriting exemplar from [Appellant]. His writings reviewed by Officer Dwyer, including the three letters and envelopes with [Appellant's] name and the letter written to Judge Covington with the name Tito DeJesus. Eason interviewed Daryl Medley, an

inmate at SCI Chester since 2017, whose name was written on the envelope containing the second threatening letter sent to Judge Covington time Eason interview contained similarities of individual characteristics, habits, and tendencies. *Id.* at 114, 121-129, 141-147, 162-68.

Patrick Raytik, a forensic scientist with the Philadelphia Police Department, testified as an expert in forensic fingerprint analysis. Raytik analyzed [Appellant's] known fingerprints collected by the Pennsylvania State Police and the latent fingerprint recovered from the envelope from December 19, 2019 sent to Judge Covington, he testified, inter alia, that [Appellant's] right thumbprint was the source of the latent fingerprint found on the envelope sent to Judge Covington.

4. Testimony of Travis Quakenbush and Tito DeJesus

At trial, Travis Quackenbush testified that he never had a case before Judge Covington and has never been to Philadelphia. At the time of trial, SCI Somerset had been Quackenbush's home institution. He was housed for a brief period in 2019 at SCI Camp Hill but never met [Appellant]. Quackenbush testified that he has never sent a letter from prison to a judge. The only communications he sends from prison are to his family.

Tito DeJesus testified that he never had a case before Judge Covington Dejesus was incarcerated a. SCI Chester in 2007 and in 2019. At the time of trial, De Jesus was incarcerated at SCI Frackville. DeJesus further testified that he never met [Appellant]. DeJesus is only able to communicate in Spanish. N.T. 10/03/2 024 at 53-55.

Trial Ct. Op., 6/17/25, at 1-6 (footnotes omitted).

Following a jury trial, Appellant was convicted of the above-stated charges. On December 18, 2024, the trial court sentenced Appellant to an aggregate term of 120 to 240 months' incarceration.

Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Counsel filed an **Anders**/**Santiago** brief with this Court.[4]  In the **Anders**/**Santiago** brief, Counsel indicated that there are no non-frivolous issues for our review.  **See Anders**/**Santiago** Brief at 20.  Additionally, Counsel identified three claims Appellant wanted to raise on appeal, reviewed those claims, and ultimately concluded that there were no non-frivolous issues on appeal.  **See id.**

"When faced with a purported **Anders**[/**Santiago**] brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw."  **Commonwealth v. Wimbush**, 951 A.2d 379, 382 (Pa. Super. 2008) (citation omitted).  Counsel must comply with the technical requirements for petitioning to withdraw by (1) filing a petition for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) providing a copy of the brief to the appellant; and (3) advising the appellant

_____

[4] We note that Appellant filed a response to Counsel's **Anders**/**Santiago** brief in which he claimed that the trial court failed to award him credit for time served and that he was entitled to a new trial due to trial counsel's ineffectiveness.  However, because Appellant's ineffectiveness claim must await review under the PCRA, the issue is frivolous in the context of an **Anders**/**Santiago** brief.  **See Commonwealth v. Tukhi**, 149 A.3d 881, 889 (Pa. Super. 2016) (holding that claims of ineffective assistance of counsel raised in an **Anders**/**Santiago** brief on direct appeal, which did not satisfy any exception to the general rule that such claims must await review under the PCRA, were frivolous); **see also Commonwealth v. Wright**, 2933 EDA 2024, 2025 WL 2105188, at *5 (Pa. Super. filed Jul. 28, 2025) (unpublished mem.) (same); Pa.R.A.P. 126(b) (noting that unpublished memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

of the right to retain private counsel, proceed *pro se*, or raise additional arguments that the appellant considers worthy of the court's attention. *See Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). In an *Anders*/*Santiago* brief, counsel must set forth the issues that the defendant wishes to raise and any other claims necessary to effectuate appellate presentation of those issues. *Commonwealth v. Millisock*, 873 A.2d 748, 751 (Pa. Super. 2005).

Additionally, counsel must file a brief that meets the requirements established in *Santiago*, namely:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

"Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Goodwin*, 928 A.2d at 291 (citation omitted). This includes "an independent review of the record to discern if there are any additional, nonfrivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citation and footnote omitted);

*accord Commonwealth v. Yorgey*, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*).

Here, Counsel has complied with the procedural requirements for seeking withdrawal. Counsel has filed a petition to withdraw, he has sent Appellant a letter explaining Appellant's appellate rights, he has informed Appellant of his right to proceed *pro se* or with private counsel, and he has supplied Appellant with a copy of the *Anders*/*Santiago* brief. *See Goodwin*, 928 A.2d at 290. Counsel provided this Court with a copy of his letter to Appellant informing him of his rights.

Furthermore, Counsel's *Anders*/*Santiago* brief complies with the requirements of *Santiago*. Counsel has included a summary of the relevant facts and procedural history, refers to portions of the record that might arguably support Appellant's claims, and sets forth the conclusion that the appeal is frivolous. *See Santiago*, 978 A.2d at 361. Accordingly, Counsel has met the technical requirements of *Anders* and *Santiago*. We now proceed to address the issues identified in the *Anders*/*Santiago* brief.

On appeal, Counsel identifies the following issues, which we reorder as follows:

1. Whether [] Appellant's convictions were based upon insufficient evidence where the Commonwealth's evidence that the Appellant had sent the offensive and illegal letters to Judge Covington was ambiguous, equivocal and open to more than one interpretation?

2. Whether the Appellant's convictions were against the weight of the evidence and shocking to one's sense of justice[?]

a. Where the evidence established that the Appellant's fingerprints were not on any letter transmitted to Judge Covington;

b. Where there were as many as 10 fingerprint impressions of other people on the envelopes containing the letters transmitted to Judge Covington;

c. Where envelopes identical to the envelopes attributed to the Appellant were routinely dispensed to all other inmates;

d. Where the handwriting expert neglected to compare the handwriting on the letters transmitted to Judge Covington with other suspects, *i.e.* Travis Quackenbush, Tito DeJesus and Daryl Medley; and

e. Where there was no DNA evidence linking the Appellant to the letters sent to Judge Covington?

3. Whether the consecutive sentences imposed upon the Appellant were unduly harsh and excessive and present a substantial question that the sentence is inappropriate and contrary to the norms underlying the Sentencing Code?

*Anders*/*Santiago* Brief at 6-7.

Counsel first identifies a challenge to the sufficiency of the evidence supporting his convictions. *Id.* at 25. Specifically, Counsel reiterates Appellant's claim that "the Commonwealth did not meet its burden because the inferenced drawn by the jury were unreasonable and not based upon the evidence presented at the trial." *Id.* at 26.

When reviewing a challenge to the sufficiency of the evidence, we are governed by the following standard:

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes

- 9 -

each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the [Appellant's] guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a [Appellant's] participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a [Appellant's] crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Wright*, 255 A.3d 542, 552 (Pa. Super. 2021) (citation omitted and formatting altered). "Importantly, the fact finder, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." *Id.* (citation omitted and formatting altered).

Here, the trial court addressed Appellant's claim as follows:

[Appellant] asserts that the evidence was insufficient as a matter of law to support the conviction for terroristic threats under 18 Pa. C.S. § 2706(a)(1). A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to commit a Crime of violence with intent to terrorize another. To support the conviction for terroristic threats, the Commonwealth must have proven beyond a reasonable doubt that; (1) the defendant made a threat to commit a crime of violence, and (2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror." *Commonwealth v. Shmott*, 976 A.2d 1184, 1188 (Pa. Super. 2009) (relying on 18 Pa.C.S. § 2706). Neither the ability

to carry out the threat nor a belief by the person threatened that it will he earned out am essential elements of the crime. *Id.* (citing *Commonwealth v. Tizer*, 684 A.2d 597, 600 (Pa Super. 1996)). An individual does not need to have specifically articulated the crime of violence that they intend to commit if the type of crime can be inferred by the nature of the statement, the context, and the surrounding circumstances. *Id.*

Here, [Appellant] made several threats in writing to Judge Covington to commit crimes of violence to her and her family members. In his December 17, 2019 letter. [Appellant] explicitly threatened to sexually assault and kill Judge Covington. In his July 13, 2020 letter, [Appellant] states "If I had a gun, I would kill you." Less than a month later, [Appellant] sent a letter to Judge Covington referencing the shooting and killing of a federal judge's family members, stating "I know where you live at, bi***  You're next."

[Appellant] made these threats with the intent to terrorize Judge Covington.  [Appellant] was sentenced by Judge Covington months before the first letter was sent.  At that hearing, Judge Covington recalled that [Appellant's] behavior at the sentencing hearing unnerved her as [Appellant] glared at her menacingly throughout. [Appellant], by attempting to conceal his identity, intended- and indeed succeeded - to alarm, scare, and intimidate Judge Covington through the violent threats of sexual assault and murder contained in his letters.  [Appellant] even admitted in his July 13, 2020 letter that the name on the envelope is not the writer's real name.  Neither of the three other inmates named on the envelopes had a case before Judge Covington.  Of the inmates that testified, one had never been to Philadelphia and the other did not read or write English.  [Appellant's] identity was revealed after his mail at SCI Chester was confiscated in August 2020, and through fingerprint analysis, as his right thumbprint was the source of a latent fingerprint found on the envelope containing the December 17, 2019 letter to Judge Covington.

Viewing this evidence in a light most favorable to the Commonwealth, there is sufficient direct and circumstantial evidence to support the convictions for terroristic threats.

[Appellant] asserts that the evidence at trial was insufficient as a matter of law to support the stalking conviction The Commonwealth must prove beyond a reasonable doubt that, pursuant to 18 Pa.C.S. § 2709.1, "(a) . . . a person commits the

- 11 -

crime of stalking when the person either . . . (1) engages in a course of conduct or repeatedly commits acts toward another person . . . under the circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person." 18 Pa.C.S. § 2709 (a)(1). The statute defines the term "communicates" as: "to convey a message without intent of legitimate communications or address by oral, nonverbal, written or electronic means, including telephone, electronic mail, Internet, facsimile, telex, wireless communication or similar transmission." *Id.* The statute further provides that a course of conduct is defined as: "a pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct The term includes, lewd, lascivious, threatening or obscene words, language, drawings, caricatures or actions, either in person or anonymously." *Id.* "Acts indicating a course of conduct which occur in more than one jurisdiction may be used by any other jurisdiction in which an act occurred as evidence of a continuing pattern of conduct or a course of conduct" ***Commonwealth v. Leach***, 729 Aid 608, 611 (Pa. Super. 1999) (Course of conduct is established by proof of two related but separate events. For purposes of the stalking statute, course of conduct is a "pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct.")

Here, [Appellant] engaged in a repeated course of conduct by attempting to conceal his identity in the multiple letters he sent to Judge Covington threatening to sexually assault and kill her. Judge Covington testified that these letters caused her substantial emotional distress and placed her in reasonable fear of bodily harm. Each letter was similar in that [Appellant] attempted to conceal his identity and [Appellant's] communication to Judge Covington contained unambiguously obscene, lewd, and threatening language, and multiple threats of serious bodily injury, including death.

Accordingly, viewing this evidence in a light most favorable to the Commonwealth, there sufficient direct and circumstantial evidence to support the convictions for terroristic threats.

[Appellant] asserts that the evidence at trial was insufficient as a matter of law to support the harassment convictions. The Commonwealth must prove beyond a reasonable doubt that, Pursuant to 18 Pa.C.S.. 2709, a person commits the crime of harassment when, with intent to harass, annoy or alarm, the

person: communicated to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures." 18 Pa C.S. A. 52709(a)(4). "An intent to harass may inferred from the totality of the circumstances." ***Commonwealth v. Cox***, 72 A.3d. 719, 722 (Pa. Super Ct 2013).

Viewing the evidence summarized above . . . including that [Appellant] made multiple threats in writing of physical violence, including a threat to shoot and sexually assault Judge Covington and members of her family, through the use of lewd and obscene words and language, in a light most favorable to the Commonwealth, there is sufficient direct and circumstantial evidence to support the conviction for harassment.

[Appellant] asserts that the evidence at trial was insufficient as a matter of law to support the convictions for criminal attempt of terroristic threats and criminal attempt of harassment. The Commonwealth must prove beyond a reasonable doubt that "a person commits an attempt, when with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime" 18 Pa.C.S. § 901(a). "The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before actual commission of the crime." ***Commonwealth v. Gilliam***, 417 A.2d 1203, 1205 (Pa. Super. 1980).

Here, viewing the evidence and elements of the offenses for which [Appellant] was convicted summarized above . . . including that [Appellant] deposited in the mail a third letter, which was confiscated in the prison mailroom, containing a direct threat of physical harm to be committed upon Judge Covington, in a light most favorable to the Commonwealth, there is sufficient direct and circumstantial evidence to support the convictions of criminal attempt of terroristic threats and criminal attempt of harassment.

Trial Ct. Op. at 6-11.

Following our review, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, Appellant's sufficiency challenges fail. ***See Palmer***, 192 A.3d at 89. Following our review of the briefs, the record, and the trial court's analysis, we conclude that there was sufficient evidence

establishing Appellant's guilt for the underlying charges. Accordingly, we affirm based on the trial court's analysis of these issues.

Counsel also identifies a challenge to the weight of the evidence supporting his convictions. *Id.* at 23. Specifically, Counsel notes that there was no DNA evidence linking him to the letters received by Judge Covington and challenges the handwriting comparison which showed that Appellant was the individual who wrote those letters. *Id.* at 24-25.

In reviewing a challenge to the weight of the evidence, we are governed by the following standard of review:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa. Super. 2017) (citations omitted).

As this Court has repeatedly stated,

> [t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of

fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.

\* \* \*

Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

***Commonwealth v. Spence***, 290 A.3d 301, 311 (Pa. Super. 2023) (citations omitted and formatting altered); ***see also Commonwealth v. Blackham***, 909 A.2d 315, 320 (Pa. Super. 2006) (stating that "[i]t is not for [the appellate court] to overturn the credibility determinations of the fact-finder" (citation omitted)).

Here, the trial court explained:

In light of the evidence of [Appellant's] guilt . . . including (1) that [Appellant's] right thumbprint was the source of the latent fingerprint found on the December 17, 2017 envelope sent to Judge Covington, (2) the handwriting on the three letter and envelopes with [Appellant's] name, and the letter written to Judge Covington with the name Tito DeJesus on the envelope that were confiscated at SCI Chester, contained similarities of individual characteristics, habits, and tendencies, (3) At the time each letter was sent, [Appellant] was incarcerated at the prisons from which each letter was sent to Judge Covington, and (4) of the two inmates whose names appeared on envelopes containing the threatening letters sent to Judge Covington, one only communicated in Spanish and neither of them ever a had a case

- 15 -

before Judge Covington - the verdict is not contrary to the evidence and does not shock one's sense of justice.

Trial Ct. Op. at 11-12.

Following our review of the record, we discern no abuse of discretion by the trial court. **See Windslowe**, 158 A.3d at 712. As noted, the jury was free to believe all, none, or some of the testimony presented at trial. **See Spence**, 290 A.3d at 311. Further, the jury, sitting as fact-finder, was tasked with determining the credibility of the witnesses and we will not substitute our judgment for the trier of fact. **See id.**; **Blackham**, 909 A.2d at 320. Therefore, Appellant is not entitled to relief on this claim.

Counsel also identifies an issue concerning the discretionary aspects of Appellant's sentence. **See Anders**/**Santiago** Brief at 27-28. Specifically, Counsel sets forth Appellant's claim that the trial court abused its discretion by failing to give proper weight mitigating factors, including Appellant's mental illness, and imposing Appellant's sentences consecutively. **Id.** at 29.

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." **Commonwealth v. Derry**, 150 A.3d 987, 991 (Pa. Super. 2016) (citations omitted). Before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted).

"To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal." *Commonwealth v. Malovich*, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted); *see also* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Battles*, 169 A.3d 1086, 1090 (Pa. Super. 2017) (citation omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Grays*, 167 A.3d 793, 816 (Pa. Super. 2017) (citation omitted).

Here, the record reflects that Appellant preserved this issue by raising it in his post-sentence motion, filing a timely notice of appeal and a court-ordered Rule 1925(b) statement, and including a Rule 2119(f) statement in his brief. *See Corley*, 31 A.3d at 296. Further, Appellant's claim raises a substantial question for our review. *See Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2015) (holding that "[t]his Court has held that an

excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question" (citation omitted)).

Our well-settled standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Additionally, our review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S. § 9781(c) and (d). Subsection 9781(c) provides:

The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S. § 9781(c).

In reviewing the record, we consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation [(PSI)].

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

*Raven*, 97 A.3d at 1253-54 (citation omitted).

"When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), [including] the protection of the public, [the] gravity of offense in relation to impact on [the] victim and community, and [the] rehabilitative needs of the defendant." *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006) (citation omitted and formatting altered). "A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." *Commonwealth v. Schutzues*, 54 A.3d 86, 99 (Pa. Super. 2012) (citations omitted).

Additionally, the trial court "must consider the sentencing guidelines." *Fullin*, 892 A.2d at 848 (citation omitted). However, "where the trial court is informed by a PSI [report], it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Edwards*, 194 A.3d 625, 638 (Pa. Super. 2018) (citation omitted and formatting altered).

- 19 -

The balancing of the sentencing factors is the sole province of the sentencing court, which has the opportunity to observe the defendant and all witnesses firsthand. *See Commonwealth v. Kurtz*, 294 A.3d 509, 536 (Pa. Super. 2023), *appeal granted on other grounds*, 306 A.3d 1287 (Pa. 2023). In conducting appellate review, this Court "cannot reweigh sentencing factors and impose judgment in place of sentencing court where lower court was fully aware of all mitigating factors." *Id.* (citation omitted).

Here, the trial court explained:

[A]fter considering both mitigating and aggravating factors, the trial court deviated from the sentencing guidelines and ordered [Appellant's] sentence to be served consecutively in to range often years to twenty years of incarceration. In imposing the sentence, the trial court considered, inter alia, [Appellant's] pre-sentence investigation [(PSI) report,] (including his employment history and education), [Appellant's] mental health issues, the sentencing memoranda submitted by [Appellant] and the Commonwealth, [Appellant's] adult and juvenile convictions, the fact that [Appellant] was serving a sentence for violating his probation when he committed these crimes, that [Appellant] twice refused to take a mental health evaluation prior to the sentencing hearing, [Appellant's] refusal to appear at trial and sentencing hearing. [Appellant's] lack of remorse, counsel's arguments, and [Appellant's] attempt to terrorize the judicial system. The trial court also considered the victim's statement, and the particular factual circumstances of this crime, U, th at [Appellant], while attempting to conceal his identity, sent multiple letters to a public official containing specific threats to the victim's fondly members and to sexually assault and kill the victim. N.T. 12/18/2024 at 28-32.

Based upon the foregoing, the trial court's sentence was consistent with the protection of the public, the gravity of the offense, the impact of the crime on the victim, and [Appellant's] rehabilitative needs. The trial court specifically stated on the record that it was deviating from the sentencing guidelines due to the aggravated factors discussed above, including but not limited

- 20 -

to [Appellant's] explicit threats to kill a judge that presided over his case. The trial court imposed consecutive sentences due to [Appellant's] extensive rehabilitative needs and the threat [Appellant] poses. For these reasons, [Appellant's] sentence was reasonable and an appropriate exercise of [the trial court's] discretion.

Trial Ct. Op. at 13-14.

Following our review of the record, we discern no abuse of discretion by the trial court. *See Raven*, 97 A.3d at 1253. The record reflects that the trial court ordered a PSI report, which it reviewed prior to sentencing. Therefore, we presume that the trial court was fully aware of the mitigating factors and considered them when imposing Appellant's sentence. *See Edwards*, 194 A.3d at 638; *see also Kurtz*, 294 A.3d at 536. Further, we will not re-weigh the trial court's consideration of the relevant sentencing factors on appeal. *See Kurtz*, 294 A.3d at 536. Finally, we conclude that the trial court did not abuse its discretion in imposing consecutive sentences, as it is well settled that defendants convicted of multiple criminal offenses are not entitled to a volume discount by the imposition of concurrent sentences. *See Brown*, 249 A.3d at 1216; *see also Commonwealth v. Pisarchuk*, 306 A.3d 872, 881 (Pa. Super. 2023). For these reasons, we conclude that Appellant is not entitled to relief.

Finally, our independent review of the record does not reveal any additional, non-frivolous issues on direct appeal. *See Flowers*, 113 A.3d at 1250; *see also Goodwin*, 928 A.2d at 291. For these reasons, we grant Counsel's petition to withdraw, and we affirm the judgment of sentence.

Judgment of sentence affirmed. Petition to withdraw granted. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/12/2026